THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. PORFIRIO TORRES, Defendant-Appellee.

First District (3rd Division) No. 1—95—3670

Opinion filed June 25, 1997.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Joan F. Frazier, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Suzanne A. Isaacson, Assistant Public Defender, of counsel), for appellee.

JUSTICE CAHILL delivered the opinion of the court:

We review dismissal of a criminal information charging defendant, Porfirio Torres, with delivery of cocaine. The information was filed on January 13, 1987, and dismissed over eight years later on September 11, 1995. For much of that time Torres was in Mexico. The trial court found that the State failed to provide Torres a speedy trial as required by the Illinois and United States Constitutions and failed to comply with the Agreement on Detainers in the Illinois Unified Code of Corrections (730 ILCS 5/3—8—9 (West 1994)). We reverse and remand with directions to reinstate the information.

The events that led to dismissal of the information in this case stretched over eight years.

Torres, a Mexican citizen, entered the United States on a visitor's visa in 1977. He came to Chicago, where he married a United States citizen and fathered two children. The Immigration and Naturalization Service (INS) issued a show cause order in February 1983, alleging that Torres was subject to deportation for remaining in the United States longer than allowed under his visa. Then, in October

1983, Torres pled guilty in the circuit court of Cook County to a felony charge of perjury on a voter's registration application. Though not incarcerated for the offense, Torres was ineligible, as a result of the felony conviction, to apply for legal residency or amnesty.

The record is silent for three years. But we know that Torres was in Cook County on December 3, 1986. He was arrested in Cook County on that date by the Metropolitan Law Enforcement Group and charged with delivery of cocaine having a street value of $136,000. The next day, at a preliminary hearing, a finding of probable cause was entered and bond was set at $75,000 (a "D" bond requiring a 10% deposit). Torres demanded trial.

Torres posted bail on the evening of December 18, 1986, but was held at the Cook County jail until the following day, when he was transferred to the custody of the INS under a federal warrant issued on that date. The warrant was based on the allegations of the show cause order entered in 1983. Three days later Torres posted bond on the federal charges. He was now free on bonds on both federal and state charges.

The record over the next two years established the following: Torres or his lawyer appeared in federal court on January 22, May 18, September 9, and November 3, 1987. Torres asked for continuances of the federal case to pursue a collateral attack on the state perjury conviction of 1983. Meanwhile the state criminal case was continued by agreement 10 times between January and December. So passed 1987.

1988 began as 1987, when on February 16, Torres was granted another continuance in federal court until after a state court date of March 16. The federal judge continued the matter until March 29.

At the March 29 hearing, Torres told the federal judge that his state charge was set for trial on April 26. The judge told Torres he would allow him voluntary departure, instead of deportation, so Torres' son could finish school and Torres could wind up his criminal matter. He then entered an order allowing Torres to leave the country voluntarily no later than July 1.

Neither Torres nor his attorney appeared on April 26 in the state matter. The assistant State's Attorney told the court that Torres' attorney was on trial and agreed to a June 8 continuance. It was later learned that Torres left the country on or about June 4, 1988.

The story is not quite over. A lawyer for Torres appeared on June 8. He represented that he had been in contact with Torres within the last week and that Torres might have mistakenly gone to another courtroom on the morning of June 8. The trial court entered a bond forfeiture but did not issue a warrant. The court set June 23

for entry of judgment on the bond and directed the lawyer to bring Torres before the court earlier if possible. On June 23 the lawyer appeared and stated that Torres was in Mexico "at the request of the INS." He did not inform the trial court that Torres had been granted a voluntary departure by the federal court to occur no later than July 1 so his son could finish school and he could wind up his state criminal charges. The trial court ordered notice of the bond forfeiture and a bench warrant be sent to Torres' last known address, and set July 22 for judgment on the bond and issuance of the warrant. Judgment was entered on the bond and the warrant issued on that date.

The final act began on November 18, 1988. A lawyer for Torres filed a motion to vacate the bond forfeiture with a refund of the deposit to the attorney of record. On December 19, 1988, that motion was granted. The warrant was not recalled. On December 23, 1995, $7^1/2$ years later, Torres was arrested in Cook County on the outstanding warrant.

We first address the finding by the trial court that the federal warrant dated December 19, 1986, amounted to a detainer against Torres while in the custody of the State under article V of Agreement on Detainers (730 ILCS 5/3—8—9 (West 1994)). We review the interpretation of a statute *de novo*. *People v. Robinson*, 172 Ill. 2d 452, 457, 667 N.E.2d 1305 (1996).

●1 The trial court appears to have misconstrued the Agreement on Detainers. The judge found that the INS took Torres from the custody of the Cook County Department of Corrections under the Agreement on Detainers. 730 ILCS 5/3—8—9 (West 1994). The Agreement on Detainers generally applies to persons who are serving a term of imprisonment, not to persons bonded out of state or federal custody (730 ILCS 5/3—8—9 (art. IV) (West 1994); see *People v. Hood*, 223 Ill. App. 3d 157, 159, 583 N.E.2d 1173 (1991); *People v. Merryfield*, 83 Ill. App. 3d 1017, 1019-20, 404 N.E.2d 907 (1980)), but may apply to persons committed to the Illinois Department of Corrections after an arrest on pending charges. *People v. Lykes*, 124 Ill. App. 3d 604, 607, 464 N.E.2d 849 (1984).

■ A liberal reading of the Agreement on Detainers would allow us, as Torres suggests, to construe the federal warrant as a detainer executed to dovetail with the release of Torres on bond from the state charges on December 18. Federal law authorizes the INS to issue detainers against an alien in federal, state or local custody. See 8 U.S.C.A. § 1357(d) (West Supp. 1997) (authorizing the INS to lodge detainers to hold pretrial detainees). But even if we do so, it does not explain the reasoning employed by the trial court to find that the

State violated the Agreement on Detainers. The court reasoned that, when Torres was turned over to the federal government, he was in the custody of Cook County and that the transfer was in compliance with the Agreement on Detainers. The federal government, then, would have been required to return Torres to Cook County once he posted bail on the federal charge. 730 ILCS 5/3—8—9 (art. V(e)) (West 1994). That was not done. The problem with the court's analysis is clear: Torres was on bond for the state charges when the federal government took him into custody December 19, 1989. We find no case holding that a person on bond is serving a "term of imprisonment" under the Agreement on Detainers. Nowhere in the Agreement on Detainers is there authority for applying its provision to the facts of this case. 730 ILCS 5/3—8—9 (West 1994); see also *People v. Carter*, 193 Ill. App. 3d 353, 354-55, 549 N.E.2d 763 (1989).

The court alternatively found that if the federal warrant was not a detainer, then the State should have issued a detainer once Torres was in federal custody. Such a "detainer" warrant would not have complied with the Agreement on Detainers because Torres was free on bond on the State charge. The State had no custodial right that would underpin a detainer warrant.

Even though the State could not lodge a detainer warrant under the Agreement on Detainers in this case, we agree the accused is still entitled to a speedy trial under the sixth and fourteenth amendments of the federal constitution and article I, section 8, of the Illinois Constitution. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8.

The United States Supreme Court has enunciated a test to determine if a defendant's constitutional right to a speedy trial has been violated. *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972); *Doggett v. United States*, 505 U.S. 647, 120 L. Ed. 2d 520, 112 S. Ct. 2686 (1992); The Illinois Supreme Court has adopted this test. *People v. Bazzell*, 68 Ill. 2d 177, 369 N.E.2d 48 (1977).

■ To determine whether the State, by excessive delay, has violated the speedy trial rights of an accused, four factors are considered: (1) whether the delay was "uncommonly long"; (2) who was responsible for the delay; (3) defendant's assertion of his right to a speedy trial; and (4) whether the delay prejudiced defendant. *Barker*, 407 U.S. at 530-33, 33 L. Ed. 2d at 116-18, 92 S. Ct. at 2192-93.

■ We must decide whether the trial court, in light of *Barker*, abused its discretion when it concluded that Torres' right to a speedy trial was violated. *People v. Belcher*, 186 Ill. App. 3d 202, 542 N.E.2d 419 (1989).

We first address whether the delay was uncommonly long. The answer is self-evident. A delay is considered presumptively prejudicial if it approaches one year. *Doggett*, 505 U.S. at 651-52, 120 L. Ed. 2d at 528, 112 S. Ct. at 2690-91. The State concedes that a delay of $8^{1}/_{2}$ years is long enough to trigger inquiry into a speedy trial violation.

Torres next argues that the order vacating his bond forfeiture "collaterally estops" the State from arguing Torres was responsible for the delay of his trial. The judge who dismissed this information stated that it was significant that the court vacated the bond forfeiture and returned the bond money to his attorney. The argument is less than persuasive. Had the state trial court known of the circumstances that motivated the federal court to grant a voluntary departure date of July 1, 1988, there would have been no basis for vacating the bond forfeiture for failure to appear in June. The record is clear that the state court was led to believe that Torres missed his June court date because he was forcibly deported beforehand. The significance of the vacatur of bond forfeiture is that it was obtained based on a misrepresentation of the true state of affairs relating to Torres' ability to appear in court in June. To suggest that the State should be charged with responsibility for the trial delay under these circumstances is to suggest that the State must suffer the consequences of Torres' wiles.

Torres alternatively argues that he was effectively deported when he was granted voluntary departure by July 1, 1988. Torres contends that he was not able to stand trial because the INS ordered his departure by that date. Again, the argument is less than persuasive.

At Torres' INS hearing, the court stated:

> "If I grant you volunteer departure and if you depart the United States, that may be a basis for *** your attorney in the criminal case to advise the Court that you were ordered to leave the country and that you cannot be present to stand trial."

The judge then asked, "And you say next month you're supposed to have your trial? Is that a firm date?" Torres responded, "[T]hat's a firm date." The judge then stated:

> "[I will] grant volunteer departure to July 1st. That should give your *** son a chance to finish school and if you intend to go down to Mexico with your family, they can go down with you or they can stay here. *Depending on the outcome of your trial in your criminal case depends on what will happen to your visa application. If you're convicted, you'll be *** spending time in *** jail for the conviction unless *** you're permitted to be out on bail.*" (Emphasis added.)

At the hearing, the immigration judge continually asked Torres if he understood what he was saying and Torres answered yes. The INS hearing transcript makes clear that Torres' "effectively deported" argument is without merit and conflicts with the plain sense of the record.

Torres next contends that, even if he did violate his bond, the State still must provide a speedy trial.

Torres relies on *United States v. Raffone*, 405 F. Supp. 549, 550 (S.D. Fla. 1975). We find the facts totally at odds with the case at hand. In *Raffone*, the defendant was arrested for counterfeiting and was released on bond, but he failed to appear. The government learned that the defendant fled to Canada but did nothing to bring the defendant to trial. About a year later the defendant wrote to the government on two different occasions, requesting copies of detainers and warrants against him, and stated his readiness to face all charges against him. *Raffone*, 405 F. Supp. at 550. The proceedings did not begin until well over a year after the defendant's request, and the court found that his right to a speedy trial was violated. *Raffone*, 405 F. Supp. at 550.

Torres, unlike the defendant in *Raffone*, left the country before the required date of departure and did not appear at scheduled hearings to inform the state court of the INS's decision of voluntary departure. He violated the directives of the immigration judge, who granted voluntary departure on July 1, 1988, specifically so Torres could resolve his criminal matter. The voluntary departure order was entered after Torres represented to the federal judge that his state trial was set "firm" for April 26, 1988.

Torres next argues that the State made no attempt to try to prevent his forced departure. This argument would have merit if, on the date he was to appear in state court, April 26, he was under a federal deportation order to be out of the country. The State was unaware of the voluntary departure order and continued the matter to June 8, still within the time frame Torres was allowed to remain in the country. We find no merit to this argument given the record we have traversed and set out.

In the alternative, Torres argues that the State could have extradited Torres from Mexico by means of the United States—Mexico Extradition Treaty, or had him returned by a less formal means, but the State never attempted to do so. 31 U.S.T. 5059, T.I.A.S. No. 9656. This argument has merit if, as in *Raffone*, Torres made a request to face the charges against him. *Raffone*, 405 F. Supp. at 550; see also *United States v. Pomeroy*, 822 F.2d 718 (8th Cir. 1987) (defendant requested extradition from a foreign country to face charges

against him, but the government made no attempt to extradite him); *Smith v. Hooey*, 393 U.S. 374, 383, 21 L. Ed. 2d 607, 614, 89 S. Ct. 575, 579 (1969) (upon a defendant's demand, the state has a constitutional duty to make a diligent, good-faith effort to bring him to trial); *United States v. McConahy*, 505 F.2d 770, 773-74 (7th Cir. 1974) (the state conceded that defendant asserted his right to a speedy trial while he was incarcerated in a foreign county, but the state made no attempt to bring him to trial). Torres cites to no case that imposes an affirmative duty on the State to track down a felon who has fled the country simply because he demanded trial before flight.

The next inquiry is whether Torres ever asserted his right to a speedy trial. Torres asserts that his oral and written demand for trial at the bond hearing was his assertion of his right to a speedy trial. But, Torres did not appear on the date set for trial in 1988. He never reasserted his right while in Mexico nor when he returned to the United States before he was re-arrested. *Cf. McConahy*, 505 F.2d at 773-74; *Hooey*, 393 U.S. at 383, 21 L. Ed. 2d at 614, 89 S. Ct. at 579 (1969) (defendants' right to a speedy trial was violated when the state did not bring them to trial promptly after defendants made a demand for trial from another jurisdiction).

Our final inquiry is whether Torres was prejudiced by the delay. Torres argues that prejudice is presumed because of the long delay. *Doggett*, 505 U.S. at 657-58, 120 L. Ed. 2d at 532, 122 S. Ct. at 2694. Additionally, Torres suffered actual prejudice because he claims he had to live "under a cloud of anxiety" about the eventual outcome of the charges. *Barker*, 407 U.S. at 533, 33 L. Ed. 2d at 118, 92 S. Ct. at 2193. Torres was also detained in Cook County jail for nearly seven months on this charge, from February 23, 1995, when he was arrested on the outstanding warrant, until September 11, 1995, when the trial court finally dismissed the charge. Torres also argues that the State's negligence compounds over time as the presumption of evidentiary prejudice grows. *Doggett*, 505 U.S. at 657, 120 L. Ed. 2d at 532, 112 S. Ct. at 2693.

The trial judge found:

"[W]ith regard to the anxiety, I think that it goes without saying that there would be anxiety about this type of case hanging over someone's head for that length of time. And in addition, Mr. Torres every time he has appeared before the court has expressed anxiety about getting this case over with; about being in custody, and about being forced to leave the State of Illinois—to leave the country pursuant to the immigration judge's order."

While we agree that Torres is presumed to be prejudiced by the long delay, the anxiety Torres allegedly felt could have been allevi-

ated if he had informed the court of the INS order and resolved this matter before he left for Mexico. The prejudice from the delay in this record is directly traceable to the behavior of Torres and that includes the "cloud of anxiety" that may have accompanied him to Mexico and on his illegal reentry.

The trial court's dismissal of this indictment was an abuse of discretion. The trial court's apparent presumption that Torres bore no responsibility for the delay was arbitrary and without factual support.

Reversed and remanded with directions.

COUSINS, P.J., and LEAVITT, J., concur.