Docket No. 100709.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LORA LYNN WOODDELL, Appellant.

*Opinion filed March 23, 2006.*

CHIEF JUSTICE THOMAS delivered the judgment of the court, with opinion.

Justices Freeman, McMorrow, Fitzgerald, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

## OPINION

The issue presented is whether the circuit court of Moultrie County properly dismissed the charges pending against

defendant, Lora Lynn Wooddell, on the grounds that the statutory speedy-trial period had lapsed. For the reasons that follow, we hold that the dismissal was proper.

## BACKGROUND

The facts are not in dispute. On November 8, 2002, the State charged defendant by information with 16 counts of deceptive practices. The information was filed in the circuit court of Moultrie County, which thereafter issued a warrant for defendant's arrest. On April 7, 2003, defendant mailed a letter to the Moultrie County circuit clerk, referencing the outstanding warrant. In that letter, defendant stated that she was serving a two-year sentence for perjury in the Illinois Department of Corrections (DOC), with an expected release date of May 30, 2003. On May 5, 2003, the State filed in the circuit court a petition for writ of *habeas corpus* to have defendant brought before the court on the outstanding deceptive practices charges. The trial court issued the writ, which was served on the records officer of the Graham Correctional Center on May 14, 2003. That same day, and for reasons unknown, the State withdrew its petition for writ of *habeas corpus*.

In the meantime, on May 7, 2003, defendant mailed to the Moultrie County circuit clerk a 160-day speedy-trial demand, made pursuant to the intrastate detainers statute (730 ILCS 5/3–8–10 (West 2002)). The demand stated that defendant was presently serving a two-year sentence for perjury in the DOC, and that she expected to be released from the DOC within the month. Defendant attached to the demand a verified affidavit of service, stating that she had served the Moultrie County State's Attorney with a copy of the speedy-trial demand by placing it in the mail on May 7, 2003. Both the demand and the affidavit of service were filed in the Moultrie County circuit court on May 15, 2003.

On May 30, 2003, defendant completed her two-year sentence for perjury and was released from prison, subject to one year of mandatory supervised release. That same day, defendant was arrested on the outstanding Moultrie County warrant and released on bond. On October 23, 2003, defendant moved to dismiss the deceptive practices charges, arguing that more than 160 days had passed since her speedy-

trial demand. In response, the State argued that, because defendant's speedy-trial demand was made pursuant to the intrastate detainers statute, it remained effective only as long as defendant remained in prison. Under the State's theory, following her release from prison, defendant fell within subsection (b) of the speedy-trial provisions of the Code of Criminal Procedure of 1963 (speedy-trial act) (725 ILCS 5/103–5(b) (West 2004)) and was required to file a new 160-day demand under that provision. Because she did not do so, the State insisted that the relevant speedy-trial period had not yet started to run. The trial court granted defendant's motion to dismiss, holding that defendant's speedy-trial demand, brought pursuant to the intrastate detainers statute, remained effective even after her release from prison.

The State appealed, and the appellate court reversed. 357 Ill. App. 3d 208. We allowed defendant's petition for leave to appeal. 177 Ill. 2d R. 315(a).

## DISCUSSION

Before this court, the State does not contest either the validity of defendant's speedy-trial demand or the fact that more than 160 days had passed between the filing of that demand and the filing of defendant's motion to dismiss. Consequently, the only issue we face is whether defendant's speedy-trial demand, made pursuant to the intrastate detainers statute, survived her release from prison. This is a question of statutory interpretation, and the principles governing our inquiry are familiar. The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503-04 (2000). Accordingly, courts should consider the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it. *People v. Davis*, 199 Ill. 2d 130, 135 (2002). The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994). Where the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction. *Davis v. Toshiba Machine Co., America*, 186 Ill.

2d 181, 184-85 (1999). The construction of a statute is a question of law, which is reviewed *de novo*. *In re Estate of Dierkes*, 191 Ill. 2d 326, 330 (2000).

The statute at issue in this case is the intrastate detainers statute, which states:

> "Except for persons sentenced to death, subsection (b), (c) and (e) of Section 103–5 of the Code of Criminal Procedure of 1963 shall also apply to persons committed to any institution or facility or program of the Illinois Department of Corrections who have untried complaints, charges or indictments pending in any county of this State, and such person shall include in the demand under subsection (b), a statement of the place of present commitment, the term, and length of the remaining term, the charges pending against him or her to be tried and the county of the charges, and the demand shall be addressed to the state's attorney of the county where he or she is charged with a copy to the clerk of that court and a copy to the chief administrative officer of the Department of Corrections institution or facility to which he or she is committed. The state's attorney shall then procure the presence of the defendant for trial in his county by habeas corpus. *** In the event that the person is not brought to trial within the allotted time, then the charge for which he or she has requested a speedy trial shall be dismissed." 730 ILCS 5/3–8–10 (West 2004).

The referenced statute, section 103–5 of the Code of Criminal Procedure, sets forth the speedy-trial act, subsection (b) of which is relevant here. That subsection provides that "[e]very person on bail or recognizance shall be tried by the court having jurisdiction within 160 days from the date defendant demands trial unless delay is occasioned by the defendant ***." 725 ILCS 5/103–5 (West 2004). Thus, under the intrastate detainers statute, a person already incarcerated on an unrelated charge enjoys the exact same speedy-trial right as someone released on bond or recognizance–that is, a "statutory right to be tried within 160 days." See *People v. Staten*, 159 Ill. 2d 419, 428 (1994).

The intrastate detainers statute is entirely straightforward, and we find nothing in it to justify a reversal of the trial court's order dismissing defendant's charges. When the State filed the Moultrie County charges, defendant was "committed to [an] institution *** of the Illinois Department of Corrections." While those untried charges remained pending, defendant filed a 160-day speedy-trial demand as authorized by the intrastate detainers statute. Despite the demand, defendant was not brought to trial within 160 days, and she moved to dismiss the charges on those grounds. Deferring to the statutory language, which plainly states that "[i]n the event that the person is not brought to trial within the allotted time, then the charge for which he or she has requested a speedy trial shall be dismissed," the trial court dismissed the charges. This result comports perfectly with the plain language of the intrastate detainers statute.

In reaching this result, we wish to emphasize that there is absolutely nothing in either the intrastate detainers statute or the speedy-trial act that in any way suggests, let alone affirmatively states, that a speedy-trial demand filed under the intrastate detainers act remains effective only as long as the defendant remains in prison. Indeed, when asked at oral argument whether the intrastate detainers statute contains any such limiting language, counsel for the State responded, "I would readily concede that it does not." Thus, the State is asking this court to read into the intrastate detainers statute a limitation that the State "readily concede[s]" is not there. Under the best of circumstances, we would be loathe to entertain such an invitation, as "[a] court is not free to rewrite legislation, or to ignore an express requirement contained in a statute." *People v. Palmer*, 148 Ill. 2d 70, 88 (1992). But in a case such as this, in which the statute at issue protects and effectuates an accused's constitutional rights, the suggestion that we constrain the statute's scope in a way not specifically authorized by the legislature is simply untenable. See *People v. Laubscher*, 183 Ill. 2d 330, 337 (1998) (criminal or penal statutes are to "be strictly construed in favor of the accused, and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute").

The appellate court, of course, reached the opposite result. 357 Ill. App. 3d 208. In doing so, the court began by noting that, following her release from prison, defendant was no longer "committed to [an] institution or facility or program of the Illinois Department of Corrections."[1] Instead, she was now a person "on bail or recognizance." The issue then became whether defendant's initial speedy-trial demand, filed under the intrastate detainers statute, survived that transition. After examining this court's decision in *People v. Garrett*, 136 Ill. 2d 318 (1990), as well as the decisions in *People v. Lykes*, 124 Ill. App. 3d 604 (1984), and *People v. Freeland*, 103 Ill. App. 3d 94 (1981), the appellate court held that it did not. In other words, according to the appellate court, defendant's release from prison rendered her initial speedy-trial demand wholly ineffective. And because defendant never filed a new demand under subsection (b) of the speedy-trial act, the appellate court concluded that no speedy-trial violation could have occurred. 357 Ill. App. 3d at 211-14.

The problem with this analysis rests with the appellate court's reading of *Garrett* and *Lykes*. From these cases, the appellate court extracted a generally applicable principle for deciding which speedy-trial statute applies in a given case, and used that principle to conclude that defendant was required to file a new demand under subsection (b) of the speedy-trial act following her release from prison. While these cases undoubtedly establish a principle for determining which speedy-trial statute controls in a given case, it is not the one identified by the appellate court, as an examination of both the cases and the relevant speedy-trial statutes reveals.

The General Assembly has enacted three principal speedy-trial statutes. Subsection (a) of the speedy-trial act creates an automatic 120-day speedy-trial right for persons held in custody on the pending charge. Such persons are not required

---

[1]To reach this result, the appellate court first had to hold that mandatory supervised release is not a "program of the Illinois Department of Corrections." This holding was the primary focus of the parties' briefing in this court.

to file a demand; rather, the period begins to run automatically. According to this court, "[u]nlike defendants who are released on bail, defendants who remain in custody before trial suffer the loss of their liberty before they are adjudicated guilty of a crime. Therefore, the legislature put the burden on the State to try the case within the time specified; the defendant has no burden to invoke the right to a speedy trial." *People v. Staten*, 159 Ill. 2d 419, 424-25 (1994).

Subsection (b) of the speedy-trial act, in turn, creates a 160-day speedy-trial right for persons released on bond or recognizance, and this period begins to run only when the accused files a speedy-trial demand. Again, according to this court, "[a] defendant who is subject to this subsection retains his or her liberty during the interval between arrest and conviction; accordingly, the State is given a longer time in which to try the charges than would be available if the defendant were in custody awaiting trial. To invoke the 160-day period of this subsection, defendants who are on bail or recognizance must serve the State with a formal demand." *Staten*, 159 Ill. 2d at 425.

Finally, there is the intrastate detainers statute, which states that subsection (b) of the speedy-trial act applies to persons already incarcerated on unrelated charges. Thus, persons already incarcerated on unrelated charges enjoy a 160-day speedy-trial right, which begins to run only upon the filing of a demand. Like persons released on bond or recognizance, "defendants *** serving prison terms for existing convictions at the time they face trial on additional charges *** do not suffer a loss of liberty while awaiting trial on the pending charges. To exercise their statutory right to be tried within 160 days, they need only to comply with section 3–8–10." *Staten*, 159 Ill. 2d at 428.

In *Garrett*, this court was called upon to examine the interplay between subsections (a) and (b) of the speedy-trial act. The defendant in that case was arrested and taken into custody on March 9, 1987. On March 30, the defendant filed a speedy-trial demand. On May 29, the defendant posted bond and was released. On October 13, defendant moved to dismiss the charges on the grounds that he had not been brought to

trial within 160 days of his March 30 speedy-trial demand. The trial court granted the motion. In reversing, this court held that, while he was in custody, the defendant was subject to subsection (a) of the speedy-trial-act, which makes no provision for the filing of a speedy-trial demand. Rather, for defendants in custody pending trial, the 120-day period runs automatically. Consequently, the defendant's speedy-trial demand, which was filed while he was in custody, was of no effect, as there was no statutory basis for it. What defendant needed to do was file a speedy-trial demand under subsection (b) once he was released, at which point the 160-day clock would begin running. He did not do this, however, so no speedy-trial violation could have occurred. *Garrett*, 136 Ill. 2d at 329-31.

In *Lykes*, the court was called upon to address the interplay between subsection (a) of the speedy-trial act and the intrastate detainers statute. In that case, the defendant was arrested for armed violence and taken into custody on March 14. On March 21, the defendant was transferred to the DOC, as the armed violence arrest violated the terms of his mandatory supervised release on a previous conviction. On April 8, the defendant filed a speedy-trial demand. The issue on appeal was whether defendant was subject to the 120-day speedy-trial period set forth in subsection (a) of the speedy-trial act, or the 160-day speedy-trial period provided for in the intrastate detainers statute. The appellate court held that it was the latter. According to the appellate court, the defendant was in custody for the charged offense (armed violence) only between March 14 and March 21, at which point he was imprisoned for violating the terms of his mandatory supervised release. Thus, when he made his speedy-trial demand, he was a person incarcerated on an unrelated charge, not a person held in custody pending trial on the charged offense. Therefore, the intrastate detainers statute applied. *Lykes*, 124 Ill. App. 3d at 607-08; see also *People v. Freeland*, 103 Ill. App. 3d 94, 96-98 (1981) (holding same).

In reaching its result below, the appellate court explained as follows:

> "When a defendant has changed from one [speedy-trial classification] to another, courts have found the defendant must comply with the requirements of the new classification. For example, when a defendant is in custody on pending charges and is later released on bail or recognizance, the defendant must make a speedy-trial demand under subsection (b) of the Speedy Trial Act even if he made a demand while in custody on the pending charges. See *Garrett*, 136 Ill. 2d at 329-30, 555 N.E.2d at 359; see also 725 ILCS 5/103–5(b) (West 2002) (requiring the demand to include the date of any prior demand made while in custody and giving credit for the time spent in custody after he or she made the demand while in custody). Moreover, when a defendant is in custody on a pending charge and then committed to a DOC facility, institution, or program, the defendant must make a demand in compliance with the intrastate detainers statute. See *Lykes*, 124 Ill. App. 3d at 608, 464 N.E.2d at 853; *People v. Freeland*, 103 Ill. App. 3d 94, 97, 430 N.E.2d 277, 280 (1981).
>
> While no cases have addressed a defendant going from incarceration to custody on a pending charge to out on bail, we continue to find the defendant's newest classification determines the demand requirement and speedy-trial term. Thus, when defendant was released from custody on bail, subsection (b) of the Speedy Trial Act (725 ILCS 5/103-5(b) (West 2002)) then applied, and defendant had to file a demand in compliance with that subsection. Accordingly, we find the trial court erred in dismissing the charges against defendant." *Wooddell*, 357 Ill. App. 3d at 213-14.

The problem with this analysis is that *Garrett*, *Lykes*, and *Freeland* in no way stand for the proposition that, every time a defendant moves from one speedy-trial classification to another, a new speedy-trial demand must be filed. Rather, they clearly stand for the proposition that a defendant is subject to whatever speedy-trial statute applies at the time he or she makes a speedy-trial demand. In *Garrett*, the defendant's first speedy-trial demand was ineffective because he made it while

in custody for the charged offense and the speedy-trial act makes no provision for a speedy-trial demand under those circumstances. Accordingly, the first time that defendant *could* make a demand was after he was released on bond, at which point subsection (b) of the speedy-trial act controlled. In *Lykes* and *Freeland*, the defendants were initially in custody for the charged offenses, but only made speedy-trial demands after being transferred to the DOC for violating the terms of their mandatory supervised releases on unrelated offenses. At that point, they fell within the intrastate detainers statute, and a 160-day demand had to be filed. In none of these cases were proper speedy-trial demands rendered ineffective by defendants' subsequent changes in status, and in none of these cases were defendants who had previously filed valid speedy-trial demands made to file new speedy-trial demands because of changes in status. The appellate court's reading of these cases is simply incorrect.

Moreover, the appellate court's misreading of *Garrett*, *Lykes*, and *Freeland* explains why the appellate court was initially concerned with whether mandatory supervised release is a DOC program. The appellate court began with the mistaken premise that, if a defendant moves from one speedy-trial classification to another, a new speedy-trial demand must be filed. 357 Ill. App. 3d at 213. Under this approach, the critical question would certainly be whether the defendant's speedy-trial classification did in fact change. Here, for example, defendant filed her initial speedy-trial demand under the intrastate detainers statute, which applies to persons "committed to any institution or facility or program of the Illinois Department of Corrections." Obviously, following her May 30, 2003, release from prison, defendant was no longer committed to a DOC institution or facility. Consequently, the only way that defendant's initial speedy-trial demand would have remained valid is if her one-year term of mandatory supervised release constituted a DOC program. The appellate court examined this question and ultimately concluded that it did not. 357 Ill. App. 3d at 211-12. Again, though, this analysis assumes the validity of the appellate court's premise. Once it is understood that a change in defendant's speedy-trial classification would have *no*

˘10˘

effect upon the continued validity of her initial demand, the appellate court's analysis breaks down. Indeed, under the facts of this case, whether mandatory supervised release is a DOC program is wholly irrelevant. The *only* question is whether defendant was a person committed to a DOC institution, facility, or program at the time her demand was filed, and on this point there is absolutely no dispute.

Finally, it is worth examining the consequences that flow from the State's position. According to the State, a speedy-trial demand filed pursuant to the intrastate detainers statute is effective only as long as the defendant remains in prison. Once released, that demand is null and void, and a new demand must be filed under subsection (b) of the speedy-trial act. If this is correct, it means that persons incarcerated on unrelated offenses are effectively subject to a 320-day speedy-trial period. In this case, defendant was released a few weeks after her speedy-trial demand. But assume that she had been released 160 days after that demand. According to the State, those days would count for nothing from a speedy-trial standpoint. Instead, the now relevant speedy-trial clock would commence only upon the filing of a new demand under subsection (b) of the speedy-trial act, at which point the State would have an *additional* 160 days to bring defendant to trial.[2] We are convinced that this is not what the legislature had in mind. Indeed, it is well established that speedy-trial statutes " 'operate[ ] to prevent the constitutional issue from arising except in cases involving prolonged delay, or novel issues.' " *People v. Staten*, 159 Ill. 2d 419, 426 (1994), quoting *People v. Stuckey*, 34 Ill. 2d 521, 523 (1966). The United States Supreme Court, however, has observed that a delay approaching one year is " 'presumptively prejudicial' " and necessitates a comprehensive constitutional examination under the four-part analysis set forth in *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972). We are doubtful that, in crafting a statutory scheme designed "to prevent the

---

[2]When asked directly at oral argument whether this was in fact its position, the State responded, "It is."

constitutional issue from arising," the General Assembly allowed for a speedy-trial period that triggers the constitutional issue as a matter of law. Nothing in the text of either the intrastate detainers statute or the speedy-trial act suggests that such an anomalous outcome was intended, and we refuse to construe these statutes in such a manner.

On this last point, the General Assembly's response to the *Garrett* decision is highly instructive. Again, in that case, the court concluded that Garrett's initial speedy-trial demand, made while in custody for the charged offense, was of no effect, and that he therefore was required to file a new speedy-trial demand under subsection (b) following his release on bail. At the conclusion of the *Garrett* decision, the court acknowledged that the outcome in that case, while compelled by the statutory language, was somewhat problematic. This is because a person like Garrett, who is initially held in pretrial custody but then later released on bail, effectively faces a statutory speedy-trial period of up to 280 days: 120 days of pretrial custody, plus 160 days following release on bail. The court observed that "a solution to the problem" would be to give such defendants credit against the 160-day speedy-trial period for any time spent in pretrial custody, but promptly added that there was "no evidence in the statute that the legislature intended for that result to be available here." *Garrett*, 136 Ill. 2d at 330.

Less than two years after *Garrett* was filed, the General Assembly amended the speedy-trial act to fix the problem identified in *Garrett*. Public Act 87–281 (Pub. Act 87–281, eff. January 1, 1992) added a new, second paragraph to subsection (b) of the speedy-trial act, which now provides:

> "For purposes of computing the 160 day period under this subsection (b), every person who was in custody for an alleged offense and demanded trial and is subsequently released on bail or recognizance and demands trial, shall be given credit for time spent in custody following the making of the demand while in custody." 725 ILCS 5/103–5(b) (West 2004).

To be sure, this amendment does not speak directly to what the General Assembly intended when it drafted the intrastate

˘12˘

detainers statute. Nevertheless, the amendment is strong evidence that the General Assembly never intended for statutory speedy-trial periods to be stacked. We therefore remain confident in our decision to apply the intrastate detainers statute as written, rather than read into it a limitation that appears nowhere in the text and generates the very problem targeted by the amendment to subsection (b).

We acknowledge that the State cites several out-of-state cases in support of its argument that a speedy-trial demand filed pursuant to an intrastate detainers statute remains effective only as long as the accused is in prison. See, *e.g.*, *State v. Julian*, 244 Kan. 101, 765 P.2d 1104 (1988); *State ex rel. Haynes v. Bellamy*, 747 S.W. 2d 189 (Mo. App. 1988); *State v. Oxendine*, 58 Md. App. 591, 473 A.2d 1311 (1984). The statutes involved in these cases, however, are substantially different from the Illinois statute and therefore offer no guidance as to how the Illinois statute should be construed.

## CONCLUSION

The only issue is whether defendant's speedy-trial demand was rendered ineffective by her subsequent release from prison, and nothing in the intrastate detainers statute, the speedy-trial act, or the relevant case law supports that conclusion. The trial court order dismissing the Moultrie County charges was entirely proper.

The judgment of the appellate court is therefore reversed, and the judgment of the circuit court is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*