# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Korzenewski*, 2012 IL App (4th) 101026

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HAROLD D. KORZENEWSKI, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-10-1026 |
| Filed | June 7, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's conviction for aggravated driving under the influence of alcohol, defendant forfeited his claim that the trial court erred in denying his motion to suppress the horizontal gaze nystagmus test based on the lack of a proper foundation when he failed to object at trial and acquiesced in its admittance, and since no error occurred, his claim did not warrant plain-error review, but the restitution order for the police department involved in his arrest was vacated on the ground that the routine traffic stop for speeding that resulted in the DUI arrest did not qualify as "an appropriate emergency response" under section 11-501.01(i) of the Illinois Vehicle Code for purposes of restitution. |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 09-CF-1388; the Hon. Timothy J. Steadman, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |

Counsel on Appeal

Michael J. Pelletier, Karen Munoz, and Duane E. Schuster, all of State Appellate Defender's Office, of Springfield, for appellant.

Jack Ahola, State's Attorney, of Decatur (Patrick Delfino, Robert J. Biderman, and Aimee Sipes Johnson, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel      JUSTICE McCULLOUGH delivered the judgment of the court, with opinion.

Presiding Justice Turner and Justice Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1      Following an August 30, 2009, traffic stop, the State charged defendant, Harold D. Korzenewski, with (1) aggravated driving under the influence of alcohol (count I) (625 ILCS 5/11-501(d)(2)(C) (West 2008)), (2) driving while license suspended or revoked (count II) (625 ILCS 5/6-303(d-3) (West 2008)), and (3) unlawful possession of drug paraphernalia (count III) (720 ILCS 600/3.5(a) (West 2008)). Defendant tendered an open guilty plea on counts II and III and proceeded to trial on count I.

¶ 2      On the day of the March 2010 trial, defense counsel filed a motion *in limine* seeking to bar any testimony regarding the horizontal gaze nystagmus (HGN) test conducted on defendant at the time of the traffic stop when no other tests were performed. Counsel argued that under *People v. McKown*, 236 Ill. 2d 278, 924 N.E.2d 941 (2010) (*McKown II*), "the undue prejudice of [the HGN] evidence outweighs its probative value." Immediately before *voir dire*, the trial court conducted a hearing on defendant's motion *in limine*. Defendant expressed his concern that since the only field sobriety test given was the HGN, when the jurors hear "evidence of the HGN test they will assume that a failure is an absolute failure, meaning they will just assume that defendant was intoxicated at the time the officer pulled him over. And absent any other tests to verify the finding in the HGN, we think that the evidence is unduly prejudicial." After hearing arguments from both parties, the court denied the motion, and the jury trial commenced. At the jury trial, defense counsel made no objection to the arresting officer's testimony about the HGN test or foundation for that testimony. On cross-examination, defense counsel asked several questions on the HGN test. The gist of the officer's testimony was that defendant was speeding, he stopped defendant, and defendant refused the one-legged stand and walk-and-turn tests stating he would fail them. Defendant also refused a Breathalyzer test. The jury found defendant guilty of aggravated driving under the influence of alcohol.

¶ 3 In April 2010, defense counsel filed a motion for judgment notwithstanding the verdict or, alternatively, for a new trial. Counsel alleged (1) the trial court erred in denying defendant's motion *in limine* seeking suppression of the HGN test and (2) the evidence was insufficient to prove defendant guilty beyond a reasonable doubt. Following a May 2010 hearing where arguments from both parties were heard, the court denied the posttrial motion and proceeded to sentencing. The court sentenced defendant to five years' imprisonment on count I and ordered him to pay $133 in restitution to the Decatur police department. Additionally, the court sentenced defendant to four years' imprisonment on count II to be served concurrently with the five-year sentence on count I and imposed a $750 fine for count III.

¶ 4 In June 2010, defendant filed a notice of appeal and a motion for reduction of sentence. We docketed his appeal and remanded with directions to strike the notice of appeal and proceed on defendant's motion to reconsider sentence. *People v. Korzenewski*, No. 4-10-0451 (Aug. 11, 2010) (unpublished order under Supreme Court Rule 23). The trial court struck defendant's *pro se* notice of appeal as directed, and defendant filed an amended motion to reconsider sentence. In December 2010, the trial court denied defendant's amended motion to reconsider sentence after a hearing.

¶ 5 This appeal followed.

¶ 6 On appeal, defendant asserts (1) he was denied a fair trial when the trial court admitted evidence of the HGN test because the State failed to lay a proper foundation for the officer's testimony regarding the HGN test as the officer who administered the test did not follow the strict protocols required in the National Highway Traffic Safety Administration (NHTSA) DWI Detection and Standardized Field Sobriety Testing, Student Manual (Manual), and (2) the court erred in ordering the $133 restitution because the Decatur police department is not a victim eligible for restitution. The State responds (1) defendant forfeited his foundation argument because he failed to preserve the issue for review and, absent forfeiture, no error resulted from the admission of the HGN test; and (2) the restitution was properly ordered. We agree with the State that defendant has forfeited the foundation issue, but agree with defendant that the restitution order was improper.

¶ 7 Generally, "[t]o preserve an issue for appeal, the defendant must have raised the issue in a motion *in limine* or an objection at trial and also in a posttrial motion." *People v. Brown*, 319 Ill. App. 3d 89, 96, 745 N.E.2d 173, 181 (2001). The failure to properly preserve an issue for review results in forfeiture. *People v. Sorrels*, 389 Ill. App. 3d 547, 552, 906 N.E.2d 788, 793 (2009). To challenge the foundation for admission of a test, a defendant must make a "timely and specific objection to the foundation requirements." *People v. Rigsby*, 383 Ill. App. 3d 818, 823, 890 N.E.2d 1146, 1150 (2008). See also *People v. Trefonas*, 9 Ill. 2d 92, 98, 136 N.E.2d 817, 820 (1956) (regarding timeliness requirement on objections, stating, "A party cannot sit by and permit evidence to be introduced without objection and upon appeal urge an objection which might have been obviated if made at the trial."). "[A]n objection requirement is especially important in cases of an improper foundation because errors in laying a foundation are easily cured." *Rigsby*, 383 Ill. App. 3d at 823, 890 N.E.2d at 1150 (citing *People v. DeLuna*, 334 Ill. App. 3d 1, 21, 777 N.E.2d 581, 598 (2002)); see also 3 Robert J. Steigmann & Lori A. Nicholson, Illinois Evidence Manual § 20:4, at 144-45 (4th

-3-

ed. 2006) (citing *People v. Bush*, 214 Ill. 2d 318, 336-37, 827 N.E.2d 455, 466 (2005), and *People v. Taylor*, 357 Ill. App. 3d 220, 226, 828 N.E.2d 799, 804 (2005)). Further, "a defendant forfeits any issues as to the impropriety of evidence if he procures, invites, or acquiesces in the admission of that evidence." *People v. Durgan*, 346 Ill. App. 3d 1121, 1131, 806 N.E.2d 1233, 1241 (2004).

¶ 8    Defendant concedes neither the motion *in limine* nor the posttrial motion specifically alleged that the officer failed to follow the guidelines delineated in *McKown II* and the NHTSA Manual. However, defendant cites *People v. Hudson*, 157 Ill. 2d 401, 434-35, 626 N.E.2d 161, 175 (1993), for the proposition the foundation issue was still properly preserved when defense counsel filed the motion *in limine* and raised the issue again in his posttrial motion. Defendant acknowledges that reviewing courts have recognized that "[a] specific objection to the admission of evidence waives all grounds not specified." *Brown*, 319 Ill. App. 3d at 96, 745 N.E.2d at 180. However, defendant argues the forfeiture or procedural default rule "should not trump the rule recognized in *Hudson*."

¶ 9    In *Hudson*, defense counsel sought to prohibit the prosecutor from making any reference to defense expert Dr. Marbin Ziporyn's relationship with Richard Speck (a then-notorious serial murderer). *Hudson*, 157 Ill. 2d at 434-35, 626 N.E.2d at 175. The defendant had raised this issue on appeal in both a pretrial motion *in limine* and in a posttrial motion. *Id.* The State had argued that the defendant forfeited the issue because he failed to object during trial, but our supreme court disagreed, holding defendant had preserved the issue by raising it in the pretrial and posttrial motions. *Id.* This case is distinguishable from *Hudson*, however, because *Hudson* does not involve preserving a foundational challenge. Defendant here did not raise any foundation error regarding the HGN test in either his motion *in limine* or his posttrial motion. Further, as the State points out, defendant could not have anticipated a foundation issue prior to trial and, thus, the foundation issue could not have been included in his motion *in limine*.

¶ 10   Defendant also contends, however, that the foundation issue was properly preserved because the question of whether the prejudicial nature of the officer's testimony outweighs its probative value is "inextricably intertwined" with the question of whether the officer's testimony met the standards outlined in *McKown II* and the NHTSA Manual. In *People v. McKown*, 226 Ill. 2d 245, 253, 875 N.E.2d 1029, 1034 (2007) (*McKown I*), the defendant challenged the admissibility of her HGN test, asserting that the trial court erred by admitting her HGN test results without first holding a *Frye* hearing to determine whether the HGN test was generally accepted in the scientific community as a reliable indicator of alcohol impairment. Our supreme court found the trial court erred in admitting the HGN testimony by taking judicial notice and remanded for a *Frye* hearing. *Id.* at 276, 875 N.E.2d at 1047. On remand, the trial court conducted a *Frye* hearing and held " 'the clinical HGN test is generally accepted in the scientific world of ophthalmology and optometry as a reliable (preliminary) indicator of alcohol impairment' " and satisfies the *Frye* standard. *McKown II*, 236 Ill. 2d at 293, 924 N.E.2d at 949-50. Further, the trial court concluded " '[a] proper foundation must include that the witness [(1)] has been adequately trained, [(2)] has conducted testing and assessment in accordance with the training, and that [(3)] he administered the particular test in accordance with his training and proper procedures.' " *Id.*,

924 N.E.2d at 950.

¶ 11 In *McKown II*, the defendant argued that the State failed to lay a proper foundation for the results of her HGN test to be admitted at trial. *Id.* at 294, 924 N.E.2d at 950. Specifically, the defendant asserted the officer failed to comply with NHTSA standards because he (1) "did not testify that he checked her eyes for equal tracking before conducting the HGN test"; (2) "did not testify that he checked her eyes for equal pupil size"; (3) "did not describe the speed at which he moved the stylus or that he held the stylus at the point of maximum deviation for the requisite four seconds"; (4) "did not testify that he repeated the procedure twice" as required by NHTSA; and (5) "confused two of the clues when he combined two steps in the protocol." *Id.* at 307, 924 N.E.2d at 957.

¶ 12 The State argued that defendant forfeited the HGN test foundation argument because she did not raise the issue at trial or in a posttrial motion, and, thus, the State was deprived of the opportunity to cure any defect in the foundation testimony. *Id.* Our supreme court rejected the State's forfeiture argument, finding the following:

"The issues properly before this court in the present appeal are whether, in general, evidence regarding HGN testing of a defendant in a DUI prosecution is admissible under the *Frye* test and, if so, what circumstances must be present before such evidence may be admitted in a specific case. We conclude that the forfeited question is inextricably intertwined with the issues that we have addressed herein, particularly given the clear record [the officer's] testimony did not meet the standards we have now adopted." *Id.* at 310-11, 924 N.E.2d at 959.

¶ 13 Contrary to defendant's contention, the foundation issue is not "inextricably intertwined" with whether the HGN test results unfairly prejudiced defendant. See *Id.* at 310, 924 N.E.2d at 959 ("If, however, the forfeited issue is not inextricably intertwined with the issues properly before the court, the forfeiture rule should be given effect."). In *McKown I*, the initial challenge was whether the HGN test results could be admitted at all, as HGN testing had never been determined to be generally accepted in the scientific community. *McKown I*, 226 Ill. 2d at 253-54, 875 N.E.2d at 1034. In *McKown II*, the supreme court agreed that HGN testing was admissible under *Frye* and adopted the HGN testing requirements as outlined in the NHTSA Manual. *McKown II*, 236 Ill. 2d at 306, 924 N.E.2d at 957. The foundation issue was properly before the *McKown II* court because once the court found HGN testing was admissible, it next had to determine under what circumstances HGN testing was admissible.

¶ 14 Here, defendant's motion *in limine* argued only that defendant's HGN testing should not be admitted because its prejudicial value outweighed its probativeness. In his posttrial motion, defendant asserted only that the trial court erred in denying the motion *in limine*. However, defendant contends that by citing *McKown II* in his motion *in limine*, the trial court was put on notice that *McKown II* governs questions of the admissibility, probative value, and prejudicial effect of HGN testimony. Having cited the case, defendant was also on notice that *McKown II* governed the admissibility of HGN testing and should have objected at trial if the State failed to lay a proper foundation for its admissibility. Because defendant failed to object at trial, he has forfeited the foundation issue. See Michael H. Graham, Graham's

-5-

Handbook of Illinois Evidence § 103.2, at 7-8 (10th ed. 2010); see also 6 Linda S. Pieczynski, Ill. Prac. §§ 23.25 to 23.30 (2d ed. 2005). An *in limine* ruling is interlocutory in nature. That issue, and any others defendant has, must be presented at trial to give the trial court the opportunity to address the issue in view of the developing record, that is, at a time when the court could consider anew its ruling at the most meaningful time. See Graham, *supra*, § 103.9, at 48.

¶ 15    Moreover, we note that defendant also forfeited the foundation issue by acquiescing in its admittance. See *Durgan*, 346 Ill. App. 3d at 1131, 806 N.E.2d at 1241. During trial, defense counsel cross-examined the arresting officer and asked several questions pertaining to the HGN test. Specifically, the following colloquy between defense counsel and Officer Pratt occurred:

> "Q. Having a nystagmus can be caused by health disorders, isn't that correct?
>
> A. Correct.
>
> Q. There could be a medical condition?
>
> A. Correct.
>
> Q. Or a neurological condition?
>
> A. Correct.
>
> * * *
>
> Q. On its own, the HGN test is not conclusive of intoxication, is that correct?
>
> A. Correct."

While defense counsel did not specifically ask questions pertaining to whether Officer Pratt administered the HGN test in accordance with NHTSA requirements, counsel did inquire into other conditions that could cause a nystagmus–conditions that Officer Pratt knew could cause a nystagmus because of his knowledge of the NHTSA Manual. Defense counsel could have asked Officer Pratt questions pertaining to the administration of the test but chose not to. As such, defendant acquiesced in Officer Pratt's testimony regarding the HGN test.

¶ 16    In his reply brief, defendant argues that should we find forfeiture, we can still reach the foundation issue under the plain-error doctrine. See *People v. Williams*, 193 Ill. 2d 306, 348, 739 N.E.2d 455, 477 (2000) (a death-penalty case; recognizing that the purpose of the plain-error doctrine is to protect and preserve the integrity of the judicial process and, thus, a reviewing court may consider a plain-error argument even if raised for the first time in a reply brief). We agree.

¶ 17    The plain-error doctrine set forth in Supreme Court Rule 615(a) (Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967)) provides a narrow exception to the general rule of procedural default. *People v. Walker*, 232 Ill. 2d 113, 124, 902 N.E.2d 691, 697 (2009). The plain-error doctrine permits a reviewing court to consider unpreserved error under the following two scenarios:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Sargent*,

239 Ill. 2d 166, 189, 940 N.E.2d 1045, 1058 (2010).

We begin our analysis by determining whether any error occurred at all. *Id.* at 189, 940 N.E.2d at 1059. If error did occur, this court then considers whether either of the two prongs of the plain-error doctrine has been satisfied. *Id.* at 189-90, 940 N.E.2d at 1059. Under both prongs, the defendant bears the burden of persuasion. *Id.* at 190, 940 N.E.2d at 1059.

¶ 18     Defendant contends the officer administering the HGN test did not comply with the prescribed pretest procedures. Specifically, he asserts the officer did not testify he asked defendant whether he wore corrective lenses or had any medical impairment that would affect the test results. Defendant also states the officer did not testify that he checked for equal pupil size or for resting nystagmus. Last, defendant complains that the officer did not testify he repeated the procedure for steps two and three as required in the NHTSA Manual. In *McKown II*, the court set forth the procedure an officer must follow to administer an HGN test as follows:

> "In brief, the officer first questions the subject to determine whether he or she has any medical condition or is taking any medication that might affect the results of the test. If not, the officer performs a preliminary test to determine whether the pupils of the subject's eyes are of equal size and whether the eyes 'track' equally as an object is moved, at eye level, from side to side. If so, the HGN test itself is performed. The officer looks for three 'clues,' assessing each eye separately. The three clues are lack of smooth pursuit, distinct nystagmus at maximum deviation, and the onset of nystagmus at an angle less than 45 degrees. One point is assigned for each clue that is present in either eye. Thus, the maximum score is six, which would indicate all three clues present in both eyes. A score of four or more is considered 'failing' and indicative of alcohol impairment." *McKown II*, 236 Ill. 2d at 284-85, 924 N.E.2d at 945 (citing *McKown I*, 226 Ill. 2d at 249-50, 875 N.E.2d at 1032).

¶ 19     Our review of the NHTSA Manual (NHTSA DWI Detection and Standardized Field Sobriety Student Manual, VIII-3 to VIII-8 (2004) (hereinafter, NHTSA Manual) (available online at http://www.wsp.wa.gov/breathtest/docs/webdms/DRE_Forms/Manuals/dwi/-Student%20Manual%20-%20September%202004.pdf (last visited May 17, 2012))) does not reveal any requirement that an arresting officer must ask a testing subject whether he wears corrective lenses. Rather, the NHTSA Manual states, "If the suspect is wearing eyeglasses, have them removed." NHTSA Manual, at VIII-6. When asked what the first step is in administering the test, Officer Pratt responded that "the first step is to, you have the individual assume the starting position, feet together, arms at their sides, you advise them you are going to check their eyes. If they are wearing glasses, you have them remove their glasses." Pratt testified to his knowledge of the protocol for a suspect with eyeglasses, which was in compliance with the NHTSA Manual, and defendant made no objection. Thus, defendant failed to establish any error in regard to the handling of a suspect with eyeglasses.

¶ 20     Our review of the NHTSA Manual also does not reveal a requirement to ask a suspect about medical conditions. Rather, the NHTSA Manual states, "Prior to administration of HGN, the eyes are checked for equal pupil size, resting nystagmus, and equal tracking (can they follow an object together). If the eyes do not track together, or if the pupils are

noticeably unequal in size, the chance of medical disorders or injuries causing the nystagmus is present." NHTSA Manual, at VIII-5. Pratt testified he ensured defendant's eyes tracked together as part of the first step, which indicated defendant did not have a medical condition. Although Pratt did not testify he checked defendant's pupils to ensure they were of equal size or for resting nystagmus, it does not necessarily follow that Pratt did not check for these conditions of medical impairment. Pratt testified that he administered the test in accordance with the procedure outlined in the NHTSA Manual and, thus, no error resulted.

¶ 21    The NHTSA Manual does require an officer to repeat all three steps of the HGN testing procedure. NHTSA Manual, at VIII-7. However, defendant again bases his argument that Officer Pratt did not repeat the procedures merely because he did not testify that he did so. We are not persuaded. Citing *McKown II*, defendant argues that "a proper foundation [for HGN testimony] must be laid, including a showing that the witness is properly trained and that he performed the test in accordance with proper procedures." *McKown II*, 236 Ill. 2d at 306, 924 N.E.2d at 957. Pratt testified he was trained to administer the HGN test in accordance with the NHTSA Manual. He had conducted over 100 HGN tests prior to testing defendant, and he stated he had administered the test to defendant in accordance with the NHTSA Manual. This testimony is unrebutted. Contrary to defendant's assertion, Pratt did testify that he was "properly trained and that he performed the test in accordance with proper procedures."

¶ 22    Last, defendant argues Officer Pratt crossed the lines of limitation drawn in *McKown II*, which agreed with the trial court that "the use of HGN test results at trial 'should be limited to the conclusion that a "failed" test suggests that the subject may have consumed alcohol and may [have] be[en] under the influence. There should be no attempt to correlate the test results with any particular blood-alcohol level or range or level of intoxication.' " *McKown II*, 236 Ill. 2d at 302, 924 N.E.2d at 954. Defendant points out that when Pratt was asked "[W]hat can cause a nystagmus?" he responded "Alcohol impairment" and "Drug impairment." Pratt testified he observed all three clues of the HGN test in both of defendant's eyes. When asked what the lack of smooth pursuit in both of defendant's eyes indicated to him, Pratt replied "Alcohol impairment." Pratt also testified that his observation of the onset of nystagmus prior to 45 degrees in both eyes also indicated impairment based on his training. However, Pratt's testimony did not cross the lines drawn in *McKown II* because he candidly testified he did not know how much alcohol defendant had consumed, and he acknowledged the HGN test, on its own, is not conclusive evidence of intoxication. Thus no error occurred.

¶ 23    Since the trial court did not commit error by allowing the HGN testimony, defendant's claim that a proper foundation was not laid does not warrant plain-error review. Because defendant did not properly preserve this issue for appeal, it is forfeited.

¶ 24    Defendant also argues the trial court erred in ordering him to pay $133 restitution to the Decatur police department. In his initial brief, defendant specifically argues the restitution order was improper because the Decatur police department is not a "victim" under section 5-5-6 of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-5-6 (West 2010)) and defendant's conduct did not cause the police department any out-of-pocket expenses, losses, damages, or injuries beyond its usual time and expense for investigating crime and

making an arrest. The State argues the restitution order was proper and was not imposed under section 5-5-6 of the Unified Code as defendant contends but, rather, was imposed and authorized under section 11-501.01(i) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11-501.01(i) (West 2010)). Defendant responds that even if the trial court did impose restitution under section 11-501.01(i) of the Vehicle Code, it did so in error because section 11-501.01(i) does not authorize restitution for what amounted to a traffic stop. We agree with defendant that the restitution was not authorized under section 11-501.01(i).

¶ 25    In his reply brief, defendant first asserts that the trial court's restitution order was not clear and definite since it did not clarify whether it was ordering restitution under section 11-501.01(i) of the Vehicle Code or section 5-5-6 of the Unified Code and is thus invalid. See *People v. White*, 146 Ill. App. 3d 998, 1003, 497 N.E.2d 888, 892 (1986) ("A judgment in a criminal proceeding must be clear and definite so that its meaning may be found from the language used without resort to judicial construction to ascertain its meaning."). We disagree.

¶ 26    At the May 21, 2010, sentencing hearing, the State requested that the trial court impose $133 for "Emergency Response Restitution to the Decatur Police Department." The trial court did so, ordering restitution in the amount of $133 to be paid to the police department. While the court did not specifically state the restitution was being ordered for "emergency response," it was ordered following the State's request and, thus, was clear and definite.

¶ 27    The question of whether a restitution order was authorized by statute and properly imposed is reviewed *de novo*. *People v. Felton*, 385 Ill. App. 3d 802, 805, 896 N.E.2d 910, 913 (2008). "The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent." *People v. Wooddell*, 219 Ill. 2d 166, 170, 847 N.E.2d 117, 120 (2006). "The best indication of legislative intent is the statutory language, given its plain and ordinary meaning." *Id.* at 170-71, 847 N.E.2d at 120.

¶ 28    Section 11-501.01(i) of the Vehicle Code provides as follows:

"In addition to any other fine or penalty required by law, an individual convicted of a violation of Section 11-501 *** whose operation of a motor vehicle *** proximately caused an incident resulting in an appropriate emergency response, shall be required to make restitution to a public agency for the costs of that emergency response. *** '[E]mergency response' means any incident requiring a response by a police officer, a firefighter carried on the rolls of a regularly constituted fire department, or an ambulance." 625 ILCS 5/11-501.01(i) (West 2010).

While the statute defines "emergency response" as "any incident requiring a response by a police officer," this language is qualified by the preceding language defining the offender's proximate liability. Under the doctrine of *in pari materia*, "all the provisions of a statute must be viewed as a whole" and "considered with reference to one another to give them harmonious effect." *People v. McCarty*, 223 Ill. 2d 109, 133, 858 N.E.2d 15, 31 (2006). In doing so, the question becomes whether a routine traffic stop for speeding qualifies as "an appropriate emergency response." We hold that it does not.

¶ 29    Our supreme court recently addressed a similar issue in *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 64, 2012 WL 525459. In *Gaffney*, the court had to determine whether the plaintiffs were entitled to health coverage benefits under

section 10(b) of the Public Safety Employee Benefits Act (820 ILCS 320/10 (West 2006)). *Gaffney*, 2012 IL 110012, ¶ 64, 2012 WL 525459. The court had to resolve whether the plaintiffs' injuries occurred as the result of their respective responses "to what [was] reasonably believed to be an emergency." (Internal quotation marks omitted.) *Id.* ¶ 55, 2012 WL 525459. In doing so, the court concluded that the operative word "emergency" in section 10(b) of the Public Safety Employee Benefits Act (820 ILCS 320/10 (West 2006)) meant "an unforeseen circumstance involving imminent danger to a person or property requiring an urgent response." *Id.* ¶ 64, 2012 WL 525459.

¶ 30    In this case, Officer Pratt testified he was assigned to traffic enforcement detail and was conducting speed enforcement when he noticed defendant's vehicle moving at a high rate of speed. Pratt pulled defendant over because the radar he was using showed defendant was driving 49 miles per hour in a 30-mile-per-hour zone at approximately 10 p.m. on Sunday, August 30, 2009. While defendant was driving 19 miles per hour over the speed limit, Pratt conducted a routine traffic stop–he was not responding to an emergency that required an urgent response.

¶ 31    Because speeding in this case was not "an unforeseen circumstance involving imminent danger," defendant did not proximately cause an incident requiring an emergency response and the restitution to the Decatur police department is not authorized under section 11-501.01(i) of the Vehicle Code. To interpret the emergency response statute as the State wants us to would result in a finding that any person who is pulled over by a police officer for the violation of any traffic law and is ultimately charged with driving under the influence could be required to make restitution to the police department that initiated the traffic stop. This result was clearly not intended by the legislature. Accordingly, we vacate the $133 restitution order. See *People v. Thompson*, 209 Ill. 2d 19, 27, 805 N.E.2d 1200, 1204 (2004) (A sentence which does not conform to a statutory requirement is void and may be attacked at any time.).

¶ 32    For the reasons stated, we affirm the trial court's judgment regarding the HGN testimony and vacate the $133 restitution order. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

¶ 33    Affirmed in part and vacated in part.