**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220117-U

Order filed May 10, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0117 Circuit No. 19-CF-1197 |
| ALMA CAMPOS-GUTIERREZ, | ) ) ) | Honorable Amy Bertani-Tomczak, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE DAVENPORT delivered the judgment of the court.
Justices McDade and Hettel concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The evidence presented at trial was sufficient to find defendant guilty beyond a reasonable doubt for failure to stop after an accident involving personal injury.

¶ 2     Defendant, Alma Campos-Gutierrez, appeals her class 4 felony conviction for failure to stop her vehicle after causing an accident involving personal injury or death, in violation of section 11-401(a) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11-401(a) (West 2018)). Defendant argues the evidence at trial was insufficient to find her guilty beyond a reasonable doubt. For the reasons stated below, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4          The State charged defendant by indictment for allegedly leaving the scene of a car accident caused by her reckless driving. Count I of the indictment charged defendant with failure to stop after causing an accident involving personal injury or death, a class 4 felony, in violation of section 11-401(a) of the Vehicle Code (625 ILCS 5/11-401(a) (West 2018)). Count II charged defendant with reckless driving, a class A misdemeanor, in violation of sections 11-503(a)(1) and 11-503(b) of the Vehicle Code (625 ILCS 5/11-503(a)(1), (b) (West 2018)).

¶ 5          The matter proceeded to a bench trial, where the evidence established the following. On June 29, 2019, at approximately 4:45 p.m., Fernando Ceballos was driving his family northbound on I-55, approaching Route 30. It was a sunny day, and the road conditions were dry and clear, with light traffic. Ceballos first noticed defendant's vehicle on the entrance ramp to I-55 from Route 30. He saw defendant's vehicle travel west across the lanes of traffic, *i.e.*, perpendicular to northbound traffic. Ceballos immediately swerved to avoid impact with defendant's vehicle, lost control, and spun out before coming to a complete stop at the right shoulder of I-55 and partially in the far right lane, facing west. Ceballos' son, Juan Carlos, was ejected out the rear windshield of the vehicle and onto the roadway.

¶ 6          While the family was looking for Juan Carlos, Ceballos searched for defendant. Ceballos saw defendant's vehicle traveling southbound in the northbound lanes, and he started walking southbound. He then saw defendant make a U-turn and travel northbound. While standing in the middle lane of the highway, he directed defendant to pull over. Ceballos testified that defendant pulled over to the shoulder approximately 15-20 feet south of his vehicle. Seeing that defendant had stopped, he started walking back to his vehicle. Immediately, defendant left the shoulder and continued driving northbound, passing the damaged vehicle.

2

¶ 7     An individual in a passing car offered to drive Ceballos to track defendant down. Ceballos accepted the offer and the two traveled for two miles before they caught up to defendant. She was driving in the right lane at the speed limit. Ceballos instructed her to pull over, and she eventually stopped on the right shoulder. Ceballos approached defendant's driver's side and asked for her information. She wrote her name and insurance information on a piece of paper. Ceballos moved to the passenger side because he was worried about being struck by a passing vehicle. He then entered defendant's vehicle and instructed her to take him back to the scene of the accident, which she did.

¶ 8     While Ceballos looked for defendant, witnesses to the accident approached Juan Carlos to help and check on his injuries. Juan Carlos testified that a family travelling behind his own stopped to check on his arm. An off-duty volunteer firefighter/EMT, Bobbie Vissering, was travelling southbound on I-55 when he saw the accident. He pulled his vehicle over, climbed over the center median, and crossed the highway to assist Juan Carlos. He stayed with Juan Carlos until the emergency medical team arrived. Defendant's car was not present at the scene when Vissering reached Juan Carlos. She returned after law enforcement arrived. Juan Carlos suffered road rash and a fractured toe and was transported to a hospital by ambulance.

¶ 9     By the time Ceballos and defendant returned, police were already processing the scene. Trooper David Ptak responded to the traffic accident. He testified that it took him approximately 30 minutes to get to the scene, and defendant arrived 15 minutes after the trooper. Juan Carlos was taken to the hospital before he arrived. After the damaged vehicle was towed, Trooper Ptak relocated defendant, witnesses, and the Ceballos family members to the Weber Road accident investigation site because it was a safer location for police to get more information.

3

¶ 10        Defendant testified she was travelling with her young daughter on Route 30 when she realized she had missed the exit. She saw an opportunity to make a U-turn but did not realize she was making a left turn into oncoming traffic on I-55. She recognized her error when she saw cars driving toward her. She saw Ceballos's vehicle swerve. She then made a U-turn to drive with the flow of traffic. She remembered possibly stopping for a second to make the U-turn, but she was focused on correcting herself. She noticed an accident had occurred, but she did not see any damage to the vehicle. Defendant wanted to find a safe place to park her car and call the police. She was also concerned about her daughter. She denied stopping by Ceballos's vehicle, explaining that she did not feel it was safe to do so. Her goal was to avoid obstructing traffic. Defendant did not call 911 because she did not want to use her phone while driving. She decided to find an exit to drive back to the scene when she noticed a car trying to get her attention. She pulled over when she felt safe. Defendant wrote her information on a piece of paper and agreed to take Ceballos back to the accident site, returning 20 minutes after the accident. She denied being forced, and she voluntarily spoke to police.

¶ 11        The court found defendant guilty of count I and not guilty of count II.

¶ 12        Defendant filed a posttrial motion, asserting the State failed to meet its burden of proof on count I. She asked the court to enter a verdict of not guilty or, alternatively grant defendant a new trial or other appropriate relief. The court denied the motion and sentenced defendant to 12 months' conditional discharge. This appeal followed.

¶ 13                                II. ANALYSIS

¶ 14        When considering a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in the State's favor, "a rational trier of fact could have found the required elements of

4

the crime beyond a reasonable doubt." *People v. Bradford*, 2016 IL 118674, ¶ 12. "The trier of fact need not, however, be satisfied beyond a reasonable doubt as to each link in the chain of circumstances. It is sufficient if all of the evidence taken together satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt." *People v. Hall*, 194 Ill. 2d 305, 330 (2000).

¶ 15        The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from the facts. *Bradford,* 2016 IL 118674, ¶ 12. "Therefore, a court of review will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses." *People v. Gray*, 2017 IL 120958, ¶ 35. We may reverse a conviction only when "the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Belknap*, 2014 IL 117094, ¶ 67.

¶ 16        Under section 11-401(a) of the Vehicle Code,

> "The driver of any vehicle involved in a motor vehicle accident resulting in personal injury to or death of any person shall immediately stop such vehicle at the scene of such accident, or as close thereto as possible and shall then forthwith return to, and in every event shall remain at the scene of the accident until the requirements of Section 11-403 have been fulfilled. Every such stop shall be made without obstructing traffic more than is necessary." 625 ILCS 5/11-401(a) (West 2018).

Section 11-403, titled "Duty to give information and render aid," sets forth the duty of a driver involved in a motor vehicle accident resulting in injury to (1) provide the driver's name, address, registration number, and the name of the vehicle's owner and (2) render reasonable assistance to the injured party. 625 ILCS 5/11-403 (West 2018).

5

¶ 17    Thus, to obtain a conviction under section 11-401(a), "the State must establish that the defendant was involved in an accident, the accident resulted in injury or death to a person, and the defendant left the scene of the accident without rendering aid or leaving the information required by section 11-403 of the Vehicle Code." *People v. Villanueva*, 382 Ill. App. 3d 301, 306 (2008). "Section 11-403 of the [Vehicle] Code imposes upon the driver a duty to render aid and to provide specified information to the victims of the accident." *People v. Nunn*, 77 Ill. 2d 243, 247 (1979). "For a conviction under section 11-401, the State must prove that the defendant had knowledge of an accident involving a person." *People v. Digirolamo*, 179 Ill. 2d 24, 40 (1997).

¶ 18    Defendant does not dispute that she was the driver of the vehicle involved in the motor vehicle accident, that the accident resulted in personal injury, or that she knew an accident had occurred. The crux of defendant's argument is that she did, in fact, comply with the provisions of section 401(a). She did not stop at the scene on the side of the highway because she felt unsafe. She decided to drive to the nearest exit and park elsewhere before calling police. She argues this is permitted by the statute, as she may stop "as close as possible and shall then forthwith return" to the accident, which was her plan before she was flagged down by Ceballos in another vehicle. She further argues that if she was not permitted to leave and return, then the language on stopping "as close as possible" would be synonymous with the language alternatively requiring a driver to "immediately stop," and the legislature would not have intended such an interpretation.

¶ 19    "The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent." *People v. Wooddell*, 219 Ill. 2d 166, 170 (2006). "The best indication of legislative intent is the statutory language, given its plain and ordinary meaning." *Id*. at 170-71. "Where the language is clear and unambiguous, we must apply the statute without resort to further

aids of statutory construction." *Id.* at 171. "The construction of a statute is a question of law, which is reviewed *de novo*." *Id.*

¶ 20      We reject defendant's allegation that a literal reading of the statute renders the term "immediately" synonymous with the term "as close as possible." We find the statute clear and unambiguous. There may be instances where a driver involved in a motor vehicle accident cannot stop immediately but would still be compliant with section 11-401(a) by stopping as close as possible, if not immediately.

¶ 21      Where two moving vehicles are involved in an accident, a defendant can be presumed to know that another person was involved. See *Nunn*, 77 Ill.2d at 245-46; *Digirolamo*, 179 Ill. 2d at 39. Section 11-401 "was designed to prevent the callous and unacceptable act of leaving the scene of an accident when aid and assistance are potentially required." *People v. Digirolamo*, 279 Ill. App. 3d 487, 492 (1996), *aff'd*, 179 Ill. 2d 24 (1997). But even so,

> "section 11-401 does not impose an absolute duty to stop regardless of the circumstances of a collision. Dark country roads and poorly lit urban crime centers breed shattered windshields as a result of sudden impact with unknown objects. There is no affirmative duty to stop in a high-crime area after a collision with an object of unknown origin. Nor is there a duty to stop on a desolate country road to render aid to a host of unknown animals that constitute the most likely source of an unknown impact that shatters a windshield. The statute's purpose is to impose a duty to stop and render aid after an accident with other people. It is a duty associated with knowledge of an accident involving a person who, because of the accident, may need aid and assistance. Whether the person is actually hurt and whether a driver knows the person is actually hurt does not define the duty." *Id.* at 495-96.

7

None of these circumstances apply here where the accident occurred while defendant was driving on a highway with light traffic on a sunny afternoon and the accident did not involve impact with an unknown object. Furthermore, defendant's argument that she was not required to render aid ignores the clear requirement of section 11-403 to render reasonable assistance to the injured party in an accident.

¶ 22    Here, the State established at trial that defendant was involved in an accident involving two moving vehicles. She was driving against the flow of traffic, causing Ceballos to swerve and lose control of his vehicle. Under these circumstances, we presume defendant knew that another person was involved in the accident, thus triggering her duty to stop and render aid. Moreover, although defendant's actual knowledge of an injured party is irrelevant to the duty to stop and render aid, see *id.* at 496, the accident did in fact result in injury to Juan Carlos, an occupant of the other vehicle involved in the accident. In violation of her statutory duty, defendant left the scene without providing information or rendering aid.

¶ 23    Defendant's claim that there was no safe place for her to stop is refuted by the evidence. Road conditions at the time of the accident were clear and sunny with light traffic. Numerous cars were able to stop near the accident. A family stopped to check on Juan Carlos. A witness crossed multiple lanes of traffic on foot to reach Juan Carlos. Another individual was able to stop long enough to allow Ceballos into his vehicle. Furthermore, the damaged vehicle was partially blocking one lane of traffic, rendering that lane at least partly unusable, leading to the inference that there would be room behind or in front of the accident to pull over. Defendant was not required to immediately stop in the center lane of the highway further blocking traffic, but she was required to pull over to the shoulder as near as she could to the accident, which she initially did according to Ceballos before immediately driving away.

8

¶ 24    We appreciate that defendant may have been frightened and concerned for the safety of both herself and her daughter. However, the trial evidence indicated that it was both feasible and safe for defendant to pull over near the scene of the accident. Rather than park her vehicle on the shoulder, defendant turned around and proceeded to drive for two miles before being flagged down by Ceballos. Defendant's conduct and the time it took for her to return to the scene of the accident, whether 20 or 45 minutes, was a clear violation of section 11-401(a), which required her to immediately stop at the scene of the accident or as close as possible to the scene of the accident. Accordingly, we conclude the evidence was sufficient to support the trial court's finding of guilt.

¶ 25                          III. CONCLUSION

¶ 26    For the reasons stated, we affirm the judgment of the circuit court of Will County.

¶ 27    Affirmed.