THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LESTER C. LYKES, Defendant-Appellant.

Third District   No. 3—83—0619

Opinion filed May 31, 1984.

Robert Agostinelli and Thomas A. Lilien, both of State Appellate De-

fender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

The defendant, Lester C. Lykes, was convicted following a bench trial of armed violence. On appeal, the defendant contends that the trial court erred in denying his motion for discharge under the speedy-trial statute. The defendant also asserts that he was not proved guilty beyond a reasonable doubt. We affirm.

The defendant was arrested for the instant offense and incarcerated in the Will County jail on March 14, 1983. A complaint was filed the next day. On March 21, 1983, the defendant was transferred to the Department of Corrections for violation of supervised release based on the instant offense. Despite the hold placed on the defendant for his violation, the hearing to revoke his supervised release was not held until after the defendant's instant conviction.

On April 7, 1983, a hearing was held on the question of the appropriate speedy-trial term. The defendant asserted that the State was required to try him in 120 days. The State responded that the appropriate term was 160 days because the defendant was in the custody of the Department of Corrections. The trial court found that the State had 160 days in which to try the defendant.

On April 8, 1983, the defendant filed his speedy-trial demand. On July 27, 1983, the defendant filed his motion for discharge. After a hearing, the trial court denied the motion for discharge on August 1, 1983. The defendant's trial commenced on August 2, 1983.

The defendant reasserts on appeal that, because he was in custody, the State was required to bring him to trial within 120 days. Because the State did not try him within this 120-day period, the defendant urges that the trial court erred in denying his subsequent motion for discharge.

A resolution of the defendant's speedy-trial issue requires a consideration of the speedy-trial statute in conjunction with the Intrastate Detainer Act. An accused's right to a speedy trial is found in section 103—5 of the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1983, ch. 38, par. 103—5.) Section 103—5(a) provides that "[e]very person in custody in this State for an alleged offense" shall be tried within 120 days. Section 103—5(b) provides that persons on bail or recognizance shall be tried "within 160 days from the date

defendant demands trial ***." Failure to try an accused within the statutory time frame results in the discharge of the accused.

However, the Intrastate Detainer Act makes the provisions of 103—5(b) applicable to some defendants incarcerated in this State. Under the terms of section 3—8—10 of the Uniform Code of Corrections, titled Intrastate Detainers and hereafter referred to as the Act, section 103—5(b) applies to a person "committed to any institution or facility or program of the Illinois Department of Corrections" who has an untried complaint or indictment pending against him. Ill. Rev. Stat. 1983, ch. 38, par. 1003—8—10.

Thus, if an accused is in custody for an alleged offense under section 103—5(a), he must be tried within 120 days. If, instead, the accused is committed to the Illinois Department of Corrections (hereafter IDOC) with an untried complaint or indictment pending, he must be tried within 160 days. The State and the defendant agree that the defendant was tried in more than 120 but less than 160 days from the date of his arrest. The issue before us, then, is whether the defendant was committed to the IDOC for violation of parole while the instant complaint was pending, or whether he was actually in custody for the instant offense although physically present in an IDOC facility.

The defendant argues that although he was physically in the custody of the IDOC, he was actually held by the State for the instant offense. The defendant bases his argument on the fact that his parole violation hearing was held only after his conviction on the instant charges. The defendant contends that, because the proper procedures for revoking his supervised release and committing him to the IDOC were not followed, he was not committed to IDOC and effectively remained in custody for the instant offense.

The defendant relies on the decisions in *People v. Patheal* (1963), 27 Ill. 2d 269, 189 N.E.2d 309, *People v. Burchfield* (1978), 62 Ill. App. 3d 754, 379 N.E.2d 375, and *People v. Powell* (1976), 43 Ill. App. 3d 934, 357 N.E.2d 725, in support of his argument that he was in custody for the alleged offense and not the IDOC. Each of these cases is, however, distinguishable from the case at bar.

In *People v. Patheal* (1963), 27 Ill. 2d 269, 189 N.E.2d 309, the defendant was arrested on August 20, 1959, on a warrant for armed robbery. On December 8, 1959, the State made an *ex parte* motion to dismiss the charge. The magistrate agreed to dismiss but no order dismissing the charge was ever entered. On December 11, Patheal was taken to the Menard penitentiary under a warrant for violation of his parole. He was then indicted for armed robbery on December 15, 1959. When Patheal was released from Menard on January 21, 1960,

he was arrested under the indictment. He filed his motion for discharge under the speedy-trial statute on February 23, 1960.

The court in *Patheal* found that the defendant was denied his right to a trial within 120 days. In so finding, the court rejected the State's argument that he could not be in the custody of the county because he was in the custody of the State while on parole and that custody did not terminate until his release on January 21, 1960. The court found instead that Patheal was in the custody of the county on the pending charge from August 20, 1959, to December 11, 1959.

The defendant's reliance on *Patheal* is misplaced for several reasons. First, the Intrastate Detainer Act had not yet been enacted. Thus, there was no statutory speedy-trial provision covering persons "committed to an institution facility or program" of the IDOC. The court was limited to consideration of the predecessor to section 103—5(a), and was never required to distinguish between incarceration for the offense as opposed to incarceration by the IDOC.

Further, the *Patheal* court did not find that Patheal was still in custody for the pending charge even after being sent to Menard. In fact, the *Patheal* court refers to the defendant's period of incarceration on the charge itself as running from the date of his arrest (August 20, 1959) to the date of his transfer to Menard (December 11, 1959). The decision of the court in *Patheal* does not support our defendant's argument that he remained in custody on pending charges even after his transfer to the IDOC.

Our decisions in *People v. Powell* (1976), 43 Ill. App. 3d 934, 357 N.E.2d 725, and *People v. Burchfield* (1978), 62 Ill. App. 3d 754, 379 N.E.2d 375, can be similarly distinguished. In both cases, the defendants were arrested and initially incarcerated on pending charges. Both defendants were subsequently held in custody on the basis that they had violated their parole. This court found that the defendants were incarcerated and, therefore, entitled to trial within 120 days of their arrest. However, both cases were decided prior to the effective date of the Act. Thus, this court in *Powell* and *Burchfield* determined only that the defendant was in custody. This court did not decide whether the defendant was in custody on pending charges as opposed to being committed to the IDOC. Because our decisions did not include a consideration of the Act, they cannot now be relied upon to interpret the relationship between the Act and section 103—5(a).

■ We find that the defendant was committed to the IDOC for violation of his supervised release. The defendant was, therefore, required to be tried within 160 days of the date he demanded a speedy trial. Because he was tried within 160 days of the date of his arrest,

the defendant was not denied his right to a speedy trial and the trial court properly denied his motion for discharge.

An analogous situation arose in *People v. Freeland* (1981), 103 Ill. App. 3d 94, 430 N.E.2d 277. The defendant in *Freeland* was arrested on a charge of burglary. He was released from jail on the charge but incarcerated for parole violation based on the pending charge. The *Freeland* court found that the terms of the Act rather than section 103—5(a) applied to the determination of the speedy-trial term. The court further distinguished the *Patheal, Powell,* and *Burchfield* cases relied upon by Freeland and the defendant in the case at bar.

■■ We similarly find that the defendant here was committed to the IDOC. We initially determine that "commitment" includes the reconfinement of the accused. We further conclude that the Act applies to a person committed to the IDOC after his arrest on a pending charge as well as those already committed at the time charges are brought. (See *People v. Wentlent* (1982), 109 Ill. App. 3d 291, 440 N.E.2d 296; *People v. Davis* (1981), 92 Ill. App. 3d 869, 416 N.E.2d 85.) Therefore, on March 21, 1983, the defendant was a person committed to the IDOC under the Act with charges pending against him.

The fact that the defendant had not received a hearing on his violation of supervised release is not controlling as to whether the defendant was committed under the Act. Any irregularities in the conduct of the revocation hearings were relevant only to whether the defendant's supervised release should have been revoked. To find otherwise would require the court in which new charges are pending to hold hearings to determine whether a proper revocation proceeding has been held before ruling on a motion for discharge.

We, therefore, find that because the defendant was committed to the IDOC for purposes of the Act, the trial court did not err in denying the defendant's motion for discharge.

■■ The defendant also asserts that he was not proved guilty beyond a reasonable doubt. The incident in question began when the defendant and the victim both parked their respective cars, emerged, and began arguing. It is undisputed that during the argument the defendant drew a gun. It is similarly undisputed that the victim was unarmed. The defendant fired three shots, striking the victim with the third shot. At trial, the defendant testified that he acted in self-defense when shooting the victim. The victim testified that he made no threatening moves toward the defendant. The defendant argued that because the victim stepped toward him, he was justified in using his weapon in self-defense.

The trial court, as finder of fact, was presented with two conflict-

ing sets of testimony. Had the court found the defendant's testimony to be credible, the defendant would have established the affirmative defense of self-defense. However, the trial court clearly found the victim's testimony to be more credible. Further, the victim's testimony was corroborated by an occurrence witness.

The decision of a trial court will not be reversed on review unless the evidence is palpably contrary to the finding or so unreasonable, improbable or unsatisfactory as to cause reasonable doubt as to the guilt of the accused. (*People v. Reese* (1973), 54 Ill. 2d 51, 294 N.E.2d 288.) The evidence in the instant case is not contrary to the finding and does not raise a reasonable doubt as to the guilt of the accused.

Accordingly, the judgment of the circuit court of Will County is affirmed.

Affirmed.

ALLOY, P.J., and BARRY, J., concur.