2020 IL App (3d) 170253

Opinion filed August 4, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Whiteside County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-17-0253 Circuit No. 11-CF-237 |
| | ) | |
| CLARENCE O. HOPKINS, | ) ) | |
| Defendant-Appellant. | ) ) | Honorable Stanley B. Steines, Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justices Carter and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Clarence O. Hopkins, was convicted of attempt to commit first degree murder (720 ILCS 5/8-4(a), 9-1 (West 2010)), armed violence (*id.* § 33A-2(b)), aggravated discharge of a firearm (*id.* § 24-1.2(a)(2)), unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)), and being an armed habitual criminal (*id.* § 24-1.7). On direct appeal, we vacated his conviction and sentence for the armed habitual criminal offense. *People v. Hopkins*, 2015 IL App (3d) 130565-U, ¶ 32. We also reinstated the conviction and sentence for the offense of unlawful use of a weapon by a felon and remanded for sentencing. See *id.* ¶ 55 (noting conviction and sentence were vacated in trial

court on one-act, one-crime principles). Thereafter, defendant filed a postconviction petition arguing appellate counsel was ineffective in the prior direct appeal for numerous reasons. The circuit court dismissed the petition at the second stage of the proceedings. Defendant appeals the dismissal of his petition for postconviction relief, arguing that the dismissal was error. For the reasons that follow, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3        Defendant was serving a term of mandatory supervised release (MSR) on a previous unrelated conviction when on July 1, 2011, the State charged him via information with the offenses of attempt to commit first degree murder and armed violence. The same day, Whiteside County issued an arrest warrant for defendant based on the attempted murder and armed violence charge. The Illinois Department of Corrections (DOC) also issued an arrest warrant for an MSR violation. Consequently, a joint group headed by the United States Marshals arrested defendant in Chicago on July 29, 2011. Defendant received the MSR violation the next day while detained in a Cook County detention center. On August 2, 2011, the DOC reconfined defendant in one of its facilities for the MSR violation until he was released into the custody of Whiteside County on December 2, 2011. Subsequently, defendant appeared in court. He pled not guilty, demanded a jury trial, and was appointed counsel. On December 6, 2011, defendant filed a speedy-trial demand.

¶ 4        On December 13, 2011, the State charged defendant with the additional offenses of aggravated discharge of a firearm and unlawful use of a weapon by a felon. On March 30, 2012, the State filed an amended information charging defendant with being an armed habitual criminal.

¶ 5        Defendant then filed two separate motions to dismiss, both based on speedy-trial violations. He argued the armed habitual criminal offense was subject to compulsory joinder and filing the charge after he had been in custody for 245 days violated his speedy-trial rights. Defendant also

argued all pending charges should be dismissed because he was not tried within 120 days, pursuant to section 103-5(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/103-5(a) (West 2010)). The trial court held a hearing on the motions.

¶ 6 Prior to argument on the motions, the State read to the court a stipulation to which the defense agreed. The stipulation stated that defendant was in the custody of the DOC from August 2, 2011, until December 2, 2011. Defendant's arguments mirrored his motions. He asserted he was taken into custody based on the Whiteside County warrant on July 29, 2011, and had a right to be tried within 120 days of the arrest. The State asserted *People v. Lykes*, 124 Ill. App. 3d 604 (1984), was directly on point and argued that the intrastate detainers statute (Detainer Act) (730 ILCS 5/3-8-10 (West 2010)) applied. The Detainer Act subjected defendant to the 160-day term of the speedy-trial statute. In addition, the State argued defendant needed to file a written demand for a speedy trial under the Detainer Act, which did not occur until December 6, 2011.

¶ 7 The trial court found that defendant never filed an appropriate demand as required under the Detainer Act; therefore, since no longer in the custody of the DOC, the Detainer Act did not apply. For purposes of defendant's speedy-trial rights, he was taken into custody when transferred to the Whiteside County Jail on December 2, 2011, at which time his 120-day speedy-trial clock began. The court further found that the armed habitual criminal offense was timely filed.

¶ 8 The State brought defendant to trial on May 8, 2012. The jury found defendant guilty of all five counts charged. Defendant engaged in posttrial motion practice, renewing the arguments that the State violated his speedy-trial rights. The trial court denied the motions pertaining to speedy-trial violations. However, the court vacated the conviction and sentence for the offense of unlawful use of a weapon by a felon pursuant to one-act, one-crime principles.

¶ 9        On direct appeal, defendant argued that the armed habitual criminal offense was subject to compulsory joinder, precluding the delay attributable to him on the initial charges from being considered in calculation of the 120 days for that offense. Defendant's appellate counsel adopted the trial court's finding that he was not in custody for purposes of the 120-day speedy-trial clock until December 2, 2011. *Hopkins*, 2015 IL App (3d) 130565-U, ¶ 30. Defendant's appellate counsel did not argue that all the convictions needed to be vacated due to speedy-trial violations.

¶ 10        Defendant succeeded in arguing that the trial court erred by failing to dismiss the armed habitual criminal offense due to the State's failure to bring him to trial within 120 days of the late-added charge. *Id.* ¶ 32. We vacated the conviction for the offense, reinstated the unlawful use of a weapon by a felon conviction and sentence, and remanded for sentencing. *Id.* ¶¶ 32, 55.

¶ 11        Defendant then filed a postconviction petition alleging, *inter alia*, appellate counsel was ineffective for failing to argue all charges should be dismissed based on the custody date of July 29, 2011, and alleged speedy-trial violations. The petition advanced to the second stage, where the State introduced a motion to dismiss, claiming the issue of a speedy-trial violation was addressed on direct appeal and defendant was foreclosed from arguing the matter via *res judicata*. A hearing ensued, and the trial court granted the State's motion. In doing so, the court explained,

> "With regard to the speedy trial issue, we also know that that was brought up and ruled upon by our appellate court. The appellate court even knew of that other date that Mr. Hopkins is referring to, whether it was July 29, 2011[,] or December 2, 2011. The appellate court was aware of those two dates. Those two dates were argued at different points as far as the speedy trial issue goes, so I do find that [the] speedy trial issue was already

ruled upon not only at the trial level but also at the appellate level, and it was affirmed at the appellate level."

¶ 12    This appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14    Defendant argues that the circuit court erred in dismissing his postconviction petition on the grounds of *res judicata*. Additionally, he argues that appellate counsel was ineffective in the previous appeal for not arguing that (1) an amendment to the Detainer Act (730 ILCS 5/3-8-10 (West 2010)) excludes him from its scope owing to the fact that he was on MSR and (2) all of his charges should have been dismissed for speedy-trial violations based on his custody date beginning on July 29, 2011. The State asserts that defendant's contention regarding the statutory amendment to the Detainer Act is without merit. The State further argues that defendant was subject to the Detainer Act's 160-day provision and requirement of a written demand while in custody of the DOC; therefore, no violation of defendant's speedy-trial rights occurred.

¶ 15    Our review of a dismissal from the second stage of proceedings under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)) is *de novo*. *People v. Childress*, 191 Ill. 2d 168, 174 (2000). We may affirm for any reason apparent from the record regardless of the lower court's rationale. *People v. Ringland*, 2015 IL App (3d) 130523, ¶ 33. We review this matter to determine the merit of defendant's contention that his right to a speedy trial was violated, as appellate counsel's failure to raise an inconsequential claim is not ineffective. See *People v. Golden*, 229 Ill. 2d 277, 283 (2008) (noting the test in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to claims of ineffective assistance of appellate counsel and "[a] petitioner must show that appellate counsel's performance fell below an objective standard of reasonableness and that this substandard performance caused prejudice"); see also *People v. Sanchez*, 392 Ill. App. 3d

1084, 1093 (2009) ("The only way in which the defendant may have been prejudiced by counsel's representation was if there was a basis for arguing a speedy trial violation.").

¶ 16    In reviewing defendant's contentions his right to a speedy trial was violated, a brief overview of the relevant statutory sections is helpful. Section 103-5(a) of the Code requires the State to bring a defendant to trial within 120 days. 725 ILCS 5/103-5(a) (West 2010). This section provides that "[e]very person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody." *Id.* Subsection (b) of the statute provides a 160-day provision for "[e]very person on bail or recognizance." *Id.* § 103-5(b). Individuals subject to this subsection must file a speedy-trial demand under this subsection and effect proper service per the statute for time to start accruing toward the 160-day limit. See *People v. Wooddell*, 219 Ill. 2d 166, 175 (2006).

¶ 17    In addition, the legislature promulgated the Detainer Act, which applies to committed individuals. The Detainer Act provides that subsection (b) of the speedy-trial statute and corresponding 160-day speedy-trial provision applies to individuals "committed to any institution or facility or program of the [DOC] who have untried complaints, charges or indictments pending in any county of this State." 730 ILCS 5/3-8-10 (West 2010).

¶ 18    Turning to the issues before us in this matter, defendant argues that the 2009 amendment to the Detainer Act excludes him from its applicability, thereby only leaving the 120-day provision to apply starting July 29, 2011.

¶ 19    The fundamental rule in construing a statute is to ascertain and give effect to the intent of the legislature. *People v. Eppinger*, 2013 IL 114121, ¶ 21. "[L]egislative intent can be ascertained from consideration of the statute in its entirety, its nature and object, and the consequences of

construing it one way or the other." *Id.* However, the best evidence of legislative intent is the statutory language itself when given its plain and ordinary meaning. *Id.*

¶ 20    The legislature amended the Detainer Act in 2009, adding two sentences providing:

> "The provisions of this Section do not apply to persons no longer committed to a facility or program of the [DOC]. A person serving a period of parole or mandatory supervised release under the supervision of the [DOC], for the purpose of this Section, shall not be deemed to be committed to the [DOC]."
>
> Pub. Act 96-642, § 5 (eff. Aug. 24, 2009) (amending 730 ILCS 5/3-8-10).

¶ 21    Read plainly, the language of the amendment is clear that individuals serving a term of parole or MSR are not committed to the DOC. This amendment makes previous law to the contrary inapplicable under the Detainer Act. See *People v. Correa*, 108 Ill. 2d 541 (1985) (noting defendants serving a term of MSR remain committed to the DOC); *People v. Williams*, 66 Ill. 2d 179, 187 (1977) (noting persons on parole remain committed to the DOC). However, it is also clear from a plain reading that, for defendant to fall outside the strictures of the Detainer Act, he must not be committed to a DOC facility. After reading the above statutory section, it is clear defendant's argument revolves around a singular question. Was defendant committed to a DOC facility? We find that he was.

¶ 22    Defendant's interpretation of the amendment does not persuade us to deviate from previous findings that an individual confined to a DOC facility for an MSR violation is committed as found in *Lykes*, 124 Ill. App. 3d 604, and *People v. King*, 366 Ill. App. 3d 552 (2006).

¶ 23    In *Lykes*, a panel of this court determined that "commitment" included the reconfinement of the accused for an MSR violation. *Lykes*, 124 Ill. App. 3d at 608; see also *People v. Woodruff*, 90 Ill. App. 3d 236, 242 (1980) (finding a person is committed when he or she is in custody of,

confined, or held by the DOC), *rev'd on other grounds*, 88 Ill. 2d 10 (1981). Accordingly, once reconfined, the defendant in *Lykes* was a person committed to the DOC under the Detainer Act with charges pending against him. *Lykes*, 124 Ill. App. 3d at 608.

¶ 24    In *King*, the defendant was confined in a county jail on a parole-hold warrant for violating his MSR when he made his first trial demand. *King*, 366 Ill. App. 3d at 556. After analyzing the Unified Code of Corrections (730 ILCS 5/1-1-1 *et seq.* (West 2004)), the court found that the defendant was committed to the DOC at the time of his speedy-trial demand. *Id.*

¶ 25    Similarly, here, defendant was reconfined in a DOC facility for violating his MSR and stipulated to that fact prior to trial. It is common sense that once an individual violates the terms of the above-designated forms of release and is reconfined in a DOC facility, he or she is no longer serving a period of parole or MSR and is, instead, committed for allegedly violating that form of supervised release. Common sense further dictates that there is a difference between an individual serving an MSR term in the community at large and an individual confined to a jail cell while on MSR. For example, the former can go fishing if he or she so wishes, while the latter cannot. Once an individual becomes confined in a DOC facility, he or she is then committed to that facility.

¶ 26    It would be absurd to construe the amendment in a manner where, even though a defendant is confined within the DOC, he or she would not be considered committed because, when arrested, he or she was on MSR. See *People v. Lewis*, 234 Ill. 2d 32, 44 (2009) (stating reviewing courts presume the legislature did not intend an absurd result). Aside from being absurd, defendant's interpretation would create an unnecessary tension between the two newly added sentences. Defendant's interpretation of the amendment is erroneous. We hold that commitment includes reconfinement of the accused. See *Lykes*, 124 Ill. App. 3d at 608; *King*, 366 Ill. App. 3d at 556.

¶ 27    We also reject defendant's argument that his reconfinement in a DOC facility does not constitute commitment as determined in *Lykes* and, instead, an individual in his situation is only deemed committed after the Prisoner Review Board has revoked the MSR. We find defendant's argument untenable for the same reasons articulated in *Lykes*:

> "The fact that the defendant had not received a hearing on his violation of supervised release is not controlling as to whether the defendant was committed under the Act. Any irregularities in the conduct of the revocation hearings was [*sic*] relevant only to whether the defendant's supervised release should have been revoked. To find otherwise would require the court in which new charges are pending to hold hearings to determine whether a proper revocation proceeding has been held before ruling on a motion for discharge." *Lykes*, 124 Ill. App. 3d at 608.

Given our previous holding, defendant was committed to a DOC facility.

¶ 28    Defendant also contends that the *Lykes* decision cannot withstand scrutiny. However, our supreme court in *Wooddell*, 219 Ill. 2d 166, summarized and analogized *Lykes* in its ruling. Again, we find no reason to deviate from the holding in *Lykes*. The *Wooddell* court cast no aspersions on *Lykes* but, instead, took issue with the lower court's analysis, finding "that *Garrett*, *Lykes*, and *Freeland* in no way stand for the proposition that, every time a defendant moves from one speedy-trial classification to another, a new speedy-trial demand must be filed. Rather, they clearly stand for the proposition that a defendant is subject to whatever speedy-trial statute applies at the time he or she makes a speedy-trial demand." *Id.* at 177. If this state's highest court believed that *Lykes* could not withstand scrutiny, it had ample opportunity to reach that conclusion but, instead, incorporated a discussion of the decision and its holding into its ruling in *Wooddell*.

¶ 29    Defendant further argues that the logic in *Wooddell* is inconsistent with the *Lykes* holding and, if *Lykes* is allowed to stand, the result would be "stacking" of time, occasioning unconstitutional confinement prior to trial. We find this contention without merit. As the *Wooddell* court explained,

> "In *Lykes* and *Freeland*, the defendants were initially in custody for the charged offenses, but only made speedy-trial demands after being transferred to the DOC for violating the terms of their mandatory supervised releases on unrelated offenses. At that point, they fell within the intrastate detainers statute, and a 160-day demand had to be filed." *Id.* at 177-78.

Clearly, all that is necessary to avoid "stacking" is the appropriate speedy trial demand.

¶ 30    Having found the reasoning in *Lykes* does withstand scrutiny and that the Detainer Act applies to defendant, we dispose of his contention that his right to a speedy trial was violated.

¶ 31    It is well established a defendant is subject to the speedy-trial statute that applies at the time he makes his speedy-trial demand. *Id.* at 177. The DOC transferred custody of defendant to Whiteside County on December 2, 2011. Defendant did not make a speedy-trial demand until December 6, 2011. The trial court found that the 120-day statute applied starting on December 2, 2011, absent a demand while defendant was in the custody of the DOC. We agree. Had the defendant made his demand prior to December 2, 2011, he would have been subject to the 160-day provision of the Detainer Act given his reconfinement to a DOC facility. See *Lykes*, 124 Ill. App. 3d at 607-08 (defendant was arrested and taken into custody and, one week later, was transferred to the DOC, as the arrest violated the terms of his MSR; when defendant made his speedy-trial demand, he was a person incarcerated on an unrelated charge, and the Detainer Act

applied). Defendant's contention that the 120-day speedy-trial clock began to run on July 29, 2011, is meritless. We find no violation of his right to a speedy trial.

¶ 32    Defendant also argues *People v. Patheal*, 27 Ill. 2d 269 (1963), *People v. Burchfield*, 62 Ill. App. 3d 754 (1978), and *People v. Hillsman*, 329 Ill. App. 3d 1110 (2002), necessitate a different result, requiring us to apply the 120-day provision starting on July 29, 2011. We find this assertion unpersuasive.

¶ 33    The *Lykes* court correctly distinguished *Patheal*, finding in that instance,

> "the Intrastate Detainer Act had not yet been enacted. Thus, there was no statutory speedy trial provision covering persons 'committed to an institution[,] facility[,] or program' of the [DOC]. The court was limited to consideration of the predecessor to Section 103-5(a), and was never required to distinguish between incarceration for the offense as opposed to incarceration by the [DOC]." *Lykes*, 124 Ill. App. 3d at 607.

The court further articulated that the

> "*Patheal* court did not find that [the defendant] was still in custody for the pending charge even after being sent to [the DOC]. In fact, the *Patheal* court refers to the defendant's period of incarceration on the charge itself as running from the date of his arrest *** to the date of his transfer to [the DOC] ***." *Id.*

¶ 34    The *Lykes* court similarly found *Burchfield* failed to address the applicability of the Detainer Act because the case was decided before the Detainer Act's effective date and could not "be relied upon to interpret the relationship between the [Detainer] Act and Section 103-5(a)." *Id.* For that very reason, we decline to follow *Burchfield*.

¶ 35        In *Hillsman*, the appellate court expressly refused to analyze application of the Detainer Act because the State failed to raise the issue in the trial court. *Hillsman*, 329 Ill. App. 3d at 1113-14. The cases defendant cites are factually inapposite and distinguishable from the matter before us.

¶ 36        Having found no violation of defendant's speedy-trial rights, the circuit court did not err in dismissing defendant's postconviction petition, as appellate counsel was not ineffective for failing to raise the argument. Owing to the fact that defendant's claims regarding the violation of his speedy-trial rights fail on the merits, we need not address the argument that the lower court erred in dismissing defendant's argument as *res judicata*. See *Ringland*, 2015 IL App (3d) 130523, ¶ 33 (noting we review the trial court's judgment rather than its reasoning and may affirm on any basis supported by the record).

¶ 37                            III. CONCLUSION

¶ 38        For the foregoing reasons, we affirm the judgment of the circuit court of Whiteside County.

¶ 39        Affirmed.

**No. 3-17-0253**

| | |
|---|---|
| **Cite as:** | *People v. Hopkins*, 2020 IL App (3d) 170253 |
| **Decision Under Review:** | Appeal from the Circuit Court of Whiteside County, No. 11-CF-237; the Hon. Stanley B. Steines, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Peter A. Carusona, and Bryon Kohut, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | Terry A. Costello, State's Attorney, of Morrison (Patrick Delfino and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |