NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250388-U

NO. 4-25-0388

IN THE APPELLATE COURT

FILED
February 19, 2026
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Whiteside County |
| CLARENCE O. HOPKINS, | ) | No. 11CF237 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Magen J. Mertes, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Doherty and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court erred in denying defendant's motion for leave to file a successive postconviction petition where he set forth a colorable claim of actual innocence based on newly discovered evidence.

¶ 2    Defendant, Clarence O. Hopkins, appeals the trial court's judgment denying his motion for leave to file a successive postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2024)). On appeal, defendant argues the court erred in denying his motion where he set forth a colorable claim of actual innocence based on newly discovered evidence. We reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. The Charges

¶ 5    In December 2011, the State charged defendant with attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(2) (West 2010)), armed violence (*id.* § 33A-2(b)), aggravated

discharge of a firearm (*id.* § 24-1.2(a)(2)), and unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)). In March 2012, the State charged defendant as being an armed habitual criminal (*id.* § 24-1.7). With respect to the attempted murder charge, the State alleged that on or about July 1, 2011, defendant performed a substantial step toward committing first degree murder "in that [he] knowingly discharged a firearm in the direction of Shaevon M. Collins causing bullets to strike Shaevon M. Collins in several locations about his body."

¶ 6                                    B. The Jury Trial

¶ 7            Defendant's jury trial was conducted in May 2012. A more detailed discussion of the evidence presented at trial is set forth in the Third District's decision addressing defendant's direct appeal. *People v. Hopkins*, 2015 IL App (3d) 130565-U, ¶¶ 9-19. For purposes of the instant appeal, we note that the only prosecution witness to provide direct evidence of the relevant event was the alleged victim, Collins. Defendant did not assert the affirmative defense of self-defense at trial, nor did he testify.

¶ 8            Collins testified that on the evening of June 30, 2011, he was walking to a park in Sterling, Illinois, to meet up with some friends. As he was walking past "an alley between Sixth Avenue and Seventh Avenue," he heard a noise coming from the alley, and when he turned around, he "saw [defendant] coming out [of] the alley." According to Collins, defendant walked toward him and said, " [']I told you I was going to get you bitch.['] " Collins testified that he threw a plastic "cup of liquor" at defendant. Collins continued, "[T]hat's when he brought the gun out the side of his waist. I don't know if [it] was on the side or the middle but I saw him bring it out and he pointed it at me." Collins grabbed defendant's forearm and "[p]ushed it down." Defendant fired the gun numerous times, ultimately hitting Collins with eight bullets. Defendant ran away, while Collins remained on the ground, unable to move. When the police

arrived, Collins told them that defendant was the shooter.

¶ 9                             C. Defendant's Initial Postconviction Petition

¶ 10          In September 2016, defendant filed his initial postconviction petition under the

Act. The trial court dismissed defendant's petition at the second stage of proceedings, and the

court's judgment was affirmed on appeal. See *People v. Hopkins*, 2020 IL App (3d) 170253,

¶ 39.

¶ 11                     D. Defendant's Motion for Leave and Supporting Affidavits

¶ 12          In October 2024, defendant filed the instant motion for leave to file a successive

postconviction petition, in which he alleged a claim of actual innocence based on newly

discovered evidence. Defendant attached the following supporting documentation to his motion:

(1) his own affidavit, (2) the affidavit of Clarence Prather, and (3) the affidavit of Christophe

West.

¶ 13                             1. *Defendant's Motion for Leave*

¶ 14          Defendant alleged in his motion for leave that he had "uncovered 'TWO (2)

WITNESSES,' who ha[d] 'CONFIRMED [HIS] SELF-DEFENSE' claim, which will show that

[he] is [']ACTUALLY INNOCENT' of *** FIRST DEGREE ATTEMPTED MURDER, ***

and that[ ] *** COLLINS *** was THE AGGRESSORE [*sic*], WITH THE GUN." Defendant

further alleged that he had "no knowledge of Mr. West or Mr. Prather existence [*sic*], and

definately [*sic*] did not know what they both witnessed prior to [trial], or even after [trial], until

[he] cross[ed] paths with [them in 2024] while incarcerated at the HILL CORRECTIONAL

CENTER." Defendant also alleged that the new evidence in Prather's and West's affidavits

would likely change the result on retrial because "[t]he only evidence the prosecution had to

convict [him] at trial, [was] the tainted, perjured testimony of the alleged victim[,] and now

- 3 -

[defendant] has two (2) material (1—an eyewitness) affidavits' to contridict [*sic*] said testimony."

¶ 15                    2. *Defendant's Supporting Affidavits*

¶ 16          As indicated, defendant attached three affidavits to his motion for leave. However, because the substance of his own affidavit is not relevant to our resolution of his claim on appeal, as explained below, we discuss only the affidavits of Prather and West.

¶ 17                         a. Clarence Prather's Affidavit

¶ 18          Clarence Prather, who is Collins's cousin, averred that in June 2012, he asked Collins for his version of the relevant events of July 1, 2011. According to Prather, Collins told him that he had "been waiting to get revenge on [defendant] because word on the street" was that defendant had been "the one behind [Collins's] cousin baby T *** and his girlfriend (Shanti Kendricks) getting shot (back in September of 2009) and [Collins] heard [defendant] was out [of prison]." Prather averred that Collins then recounted the following version of events to him:

> "2). So I finally ran into [defendant], mind you this [was] my first time seeing him since the night me and baby T jumped on him back in September of 2009. So I caught him walking in [S]terling that night all [of] this happened. He didn't see me at first. I had the 40 (40 caliber pistol) on me. So when I walked up on him I could see he had that scared look, so that charged me up more. I threw the cup of liquor I was drinking on his face and started beating his ass. Then I got on top of him and continued punching him. Then I started choking him.
>
> 3). By this time my adrenaline was pumping. I was already high off 3 ecstacy [*sic*] pills and a 5th of hennessy, so now I'm ready to kill him. So I pulled the gun out [of] my back waist [*sic*] and I was about to point the gun and try to

- 4 -

shoot him he grabbed it. Now we struggling [*sic*] over the gun. I think by him being so scared he got strength out of nowhere. So as we struggling [*sic*] the gun goes off at[ ]least 3 or 4 shot [*sic*]. So I get hit in the arm. That's when I let the gun go. The gun fell and he hurried up and grabbed it. I'm so charged up and high I started chasing after him trying to get my gun back.

4). He started backing up, and shooting at the ground trying to scare me I guess. But I kept charging him. The next thing I know I fell. I tried to get back up and fell again. I was so high I didn't even know I was shot until I started seeing blood. [Defendant] dropped the gun and started running.

\*\*\*

6). I still can't believe I almost got killed with my own gun. \*\*\* As soon as the police came I told them [defendant] shot me. \*\*\* Then [defendant's] phone fell off him and[ ]they got it. So I just told the police he walked up on me trying to kill me. I knew they was going to believe me because I'm the one shot up, and he left his phone."

¶ 19　　In his affidavit, Prather also explained why he had not come forward sooner with the above information:

"I \*\*\* wasn't never [*sic*] going to say anything about what [Collins] told me because that[']s my cousin. But recently I found out that he was the one that stole my money and drugs while I was locked up and he had sex with my girlfriend while I was locked up too. I found out he did all this when I was in Lee County Jail in February of 2024. \*\*\* So that[']s why I'm telling the truth right now after 13 years. My cousin [(Collins)] is a back stabber and I knew from what he told

- 5 -

me [defendant] was just defending himself. I just didn't have no reason to come forward but now I do."

¶ 20                                    b. Christophe West's Affidavit

¶ 21          Christophe West averred that he had witnessed the physical altercation between defendant and Collins but immediately fled from the scene because he had illegal drugs in his possession and therefore did not want to speak with the police. According to West, between midnight and 12:30 a.m. on July 1, 2011, he "was in the back of the apartment building on 6th Ave.[ ]and 5th St. in STERLING, ILLINOIS waiting to meet one of [his drug] customers" when he observed Collins and defendant "talking in the middle of the street." West averred that he then witnessed the following:

"3) Then all of a sudden, [Collins] threw a cup [of] liquid in [defendant's] face, and started HITTING [HIM] until [he] fell to the ground;

4) [Collins] got on top of [defendant] and continued HITTING [HIM], THEN STARTED CHOKING [HIM];

5) Then, I seen [*sic*] [Collins] pull a GUN from his BACK WAIST BAND and tried to AIM IT TOWARDS [DEFENDANT'S] face;

6) That's when [defendant] grabbed [Collins'] arm and THEY STRUGGLED OVER THE GUN;

7) And as they struggled over the gun, I heard a few shots go off;

8) Then the gun hit the ground and [defendant] hurried-up [*sic*] to grab the gun and got up, and started walking backwards, while still looking at [Collins];

9) Then, [Collins] got up and charged towards [defendant];

10) That's when I heard several more shots and I knew that was my cue to

leave because, I knew the police would come soon and I had some drug[ ]s on me;

11) So, I left as quick as I could."

West further averred that he did not come forward with the above information sooner because he "got locked-up" shortly after the incident and did not learn defendant had been imprisoned until he was transferred to the same prison as defendant in 2024. West averred that he told defendant for the first time that he had "witnessed the whole thing" and would sign an affidavit explaining as much "IN THE HOPES THAT THE TRUTH WILL BE REVEAL[ED]."

### 3. *The Trial Court's Written Order*

¶ 22        In April 2025, the trial court entered a detailed written order, denying defendant's motion for leave on the basis that defendant's allegations and supporting documents were legally insufficient to set forth a colorable claim of actual innocence. Because the State has seemingly adopted the court's reasoning as its argument on appeal, we will discuss the court's order denying defendant's motion.

¶ 23        Relying on *People v. Edwards*, 2012 IL 111711, ¶¶ 34-37, the trial court first found that defendant's supporting affidavits were not "newly discovered" because he "knew at the time of trial that Collins allegedly had the gun and aimed it at him, so this self-defense evidence could have been discovered sooner through the exercise of due diligence." The court also found that "[e]ven if the affidavits *** were considered 'new evidence,' they are not so conclusive as to make it more likely than not that no reasonable juror would have convicted [defendant]." The court reasoned that defendant's new evidence would not support a self-defense claim on retrial, given "the fact that the testimony elicited at trial was that Collins was shot 8 times," which, according to the court, showed defendant had responded with excessive force. The court stated:

- 7 -

"Based upon *People v. Guja*, 2016 IL App. (1st) 140046, ¶[ ]54 (1st Dist.), if a defendant responds to confrontation with such excessive force that he is no longer acting in self-defense but in retaliation, the excessive use of force renders the defendant the aggressor, even if the other person involved actually commenced the confrontation."

¶ 24       This appeal followed.

¶ 25                              II. ANALYSIS

¶ 26       On appeal, defendant argues the trial court erred in denying his motion for leave to file a successive postconviction petition where he set forth "a colorable claim of actual innocence based on Prather and West's affidavits, which are newly discovered, material, noncumulative, and conclusive." The State first argues that defendant failed to set forth a colorable claim of actual innocence because "the affidavits of Prather and West do not satisfy the definition of 'newly discovered.' " Alternatively, the State contends that even if the affidavits qualify as "newly discovered," they are "not so conclusive as to make it more likely than not that no reasonable juror would have convicted *** defendant."

¶ 27              A. The Act and Successive Postconviction Petitions

¶ 28       "The Act permits an imprisoned person to institute a proceeding asserting there was a substantial denial of his rights under the Constitutions of the United States or of the State of Illinois or both." *People v. Harris*, 2024 IL 129753, ¶ 42 (citing 725 ILCS 5/122-1(a)(1) (West 2018)). "Because a postconviction petition is a collateral attack on the judgment, issues that were raised and decided on direct appeal are barred from consideration by the doctrine of *res judicata*, while issues that could have been raised, but were not, are forfeited." *People v. Taliani*, 2021 IL 125891, ¶ 53. "In addition to this procedural default rule, both the Act and our

caselaw make clear that the filing of only one postconviction [petition] is contemplated." *Id.* However, our supreme court has "recognized that fundamental fairness requires relaxation of the statutory bar to a successive petition in some cases." *Harris*, 2024 IL 129753, ¶ 42. In relevant part, "a petitioner may be granted leave to file a successive petition to avert a fundamental miscarriage of justice." (Internal quotation marks omitted.) *Id.* "In order to demonstrate a miscarriage of justice to excuse the application of the procedural bar, a petitioner must show actual innocence." *Edwards*, 2012 IL 111711, ¶ 23.

¶ 29　　　　In addressing a motion for leave to file a successive postconviction petition based on a claim of actual innocence, our supreme court has instructed that "leave of court should be denied only where it is clear, from a review of the successive petition and the documentation provided by the petitioner that, as a matter of law, the petitioner cannot set forth a colorable claim of actual innocence." *Id.* ¶ 24. "When a petitioner, through his supporting documentation, raises the probability that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence, the court should grant leave to file." *Harris*, 2024 IL 129753, ¶ 43. "Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence." *Id.* "[T]he denial of leave to file a successive postconviction petition alleging actual innocence is reviewed *de novo*." *People v. Robinson*, 2020 IL 123849, ¶ 40.

¶ 30　　　　　　　　　　　　B. Actual Innocence Claims

¶ 31　　　　To set forth a claim of actual innocence at the motion-for-leave stage of postconviction proceedings, "the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial." *Id.* ¶ 47. "Newly discovered evidence is evidence that was discovered after trial and

that the petitioner could not have discovered earlier through the exercise of due diligence." *Id.* "[T]he conclusive character element refers to evidence that, when considered along with the trial evidence, would probably lead to a different result." *Id.* "Ultimately, the question is whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." *Id.* ¶ 48.

¶ 32                              C. Defendant's Actual Innocence Claim

¶ 33          As an initial matter, we note that defendant does not argue on appeal that his own affidavit constitutes "newly discovered" evidence. We also note that the State has made no argument that any of defendant's allegations are positively rebutted by the record or that the affidavits of Prather and West are immaterial or cumulative. Thus, for purposes of resolving the instant appeal, we must accept defendant's allegations as true and limit our analysis to whether the affidavits of Prather and West qualify as "newly discovered" and "conclusive."

¶ 34                              1. *Newly Discovered*

¶ 35          Defendant alleged in his motion for leave that the affidavits of Prather and West were "newly discovered" because he had "no knowledge of Mr. West or Mr. Prather existence [*sic*], and definately [*sic*] did not know what they both witnessed prior to [trial], or even after [trial], until [he] cross[ed] paths with [them in 2024] while incarcerated at the HILL CORRECTIONAL CENTER." Prather averred that he was "never going to say anything about what [Collins had] told [him] because that[']s [his] cousin. But recently [Prather] found out that [Collins] was the one that stole [his] money and drugs while [he] was locked up and *** had sex with [his] girlfriend while [he] was locked up too." West averred that he immediately fled from the scene because he had drugs on him and did not want to speak to the police, and he further averred that he did not learn of defendant's imprisonment until 2024, when he was transferred to

- 10 -

the same prison as defendant.

¶ 36    The State, relying on *Edwards*, 2012 IL 111711, ¶¶ 34-37, argues the affidavits are not "new" because defendant "must have known at the time of trial 'that Collins had the gun and aimed it at him,' " which, according to the State, means defendant could have discovered the "self[-]defense evidence *** sooner through the exercise of due diligence." The State's reliance on *Edwards* is misguided, as that case is readily distinguishable. In *Edwards*, the supreme court held that two of the defendant's affidavits were not "newly discovered" where he knew of the two affiants before trial yet still failed to attempt to subpoena them to testify, which amounted to a lack of due diligence. *Id.* ¶¶ 34-37. That is not what happened in this case. As alleged, defendant did not know of either Prather or West before trial. As a result, the portion of *Edwards* cited by the State simply has no application to the facts of this case. Further, *Edwards* actually contradicts the State's argument. See *id.* ¶ 38 (finding that even though the defendant "obviously knew" of the facts underlying his claim prior to trial and the source of those facts, "the evidence in [one of the supporting] affidavit[s] was nevertheless unavailable at trial [citation], and the evidence thus qualified as newly discovered" (internal quotation marks omitted)); see also *People v. Wilson*, 2025 IL App (1st) 230027, ¶ 47 ("Following *Edwards*, there can be no doubt that we look to whether the evidence, testimony, or witness in question is newly discovered, not whether any facts that such evidence tends to establish were already known to the defendant."). Thus, we reject the State's argument.

¶ 37    We agree with defendant that the affidavits of Prather and West qualify as "newly discovered" evidence. The First District has repeatedly held that "[i]f an unknown, unobserved, and unrecorded witness chooses not to come forward, there is no amount of due diligence that can force him or her to come forward to 'get involved.' " *People v. Anderson*, 2021 IL App (1st)

- 11 -

200040, ¶ 63 (quoting *People v. Fields*, 2020 IL App (1st) 151735, ¶ 48). Recently, our supreme agreed with the First District in *Anderson*, stating that the *Anderson* court's "reasoning [is] sound and persuasive" and consistent with the supreme court's holding in *People v. Ortiz*, 235 Ill. 2d 319, 334 (2009). *Harris*, 2024 IL 129753, ¶ 56 (citing *Anderson*, 2021 IL App (1st) 200040, ¶¶ 63, 65); see *Ortiz*, 235 Ill. 2d at 334 (finding a witness was newly discovered where the witness "did not admit to *** having witnessed the incident," "would not have been seen by [the] defendant," and immediately fled from the scene).

¶ 38        Here, Prather and West each fit the definition of an "unknown, unobserved, and unrecorded witness," and no amount of due diligence on defendant's part could have forced them to come forward sooner. *Anderson*, 2021 IL App (1st) 200040, ¶ 63. Prather averred that he was "never going to say anything" until he "found out that [Collins] was the one that stole [his] money and drugs while [he] was locked up and *** had sex with [his] girlfriend while [he] was locked up too." This is similar to the situation in *Anderson*, in which the affidavit was held to be newly discovered where the affiant averred that he did not come forward sooner because "he did not want to get involved" and he "did not like [the] defendant" because they "were dating the same girl" at the time and had "had a verbal & physical altercation over her." (Internal quotation marks omitted.) *Id.* ¶ 64. West also qualifies as a new witness. He averred that he immediately fled from the scene and did not learn of defendant's imprisonment until 2024, and nothing in the record suggests that defendant knew, or should have known, that West had witnessed the altercation. This fact pattern has repeatedly been held to qualify a witness as "newly discovered." See, *e.g.*, *Harris*, 2024 IL 129753, ¶¶ 52, 63 (holding an affidavit was newly discovered where the affiant "was an eyewitness who fled the scene after the shooting and was not interviewed by the police, investigators, attorneys, or anyone else," and the defendant alleged "he first met [the

- 12 -

affiant] in prison after trial"); *Ortiz*, 235 Ill. 2d at 334 (see above); *Anderson*, 2021 IL App (1st) 200040, ¶ 65 (holding affidavits were newly discovered "where the two new eyewitnesses did not previously admit to witnessing the shooting, where it is unlikely that [the] defendant or others would have observed or noticed them, and where they insured their anonymity by their immediate flight from the scene"); *People v. Willingham*, 2020 IL App (1st) 162250, ¶ 26 (holding an affidavit was newly discovered where the defendant did not know the affiant was present at the scene or that he even existed, and the affiant did not choose to come forward until after the trial).

¶ 39 Because defendant did not know—and had no reason to know—of either affiant prior to trial, no amount of due diligence on his part could have disclosed their identity or made them come forward sooner. See *Harris*, 2024 IL 129753, ¶ 55; *Anderson*, 2021 IL App (1st) 200040, ¶ 63. Thus, we find the affidavits of Prather and West qualify as "newly discovered" supporting evidence.

¶ 40 2. *Conclusive*

¶ 41 Having found that the affidavits of Prather and West are "newly discovered" supporting evidence, we must next determine whether they are also "conclusive." In his motion for leave, defendant alleged that the new evidence in Prather's and West's affidavits would likely change the result on retrial because "[t]he only evidence the prosecution had to convict [him] at trial [was] the tainted, perjured testimony of the alleged victim[,] and now [defendant] has two (2) material (1—an eyewitness) affidavits to contridict [*sic*] said testimony." The State argues on appeal that even if a jury were to believe Collins was the the initial aggressor, defendant's self-defense theory would still fail on retrial given that, by shooting Collins eight times, defendant responded "with such excessive force that he [was] no longer acting in self defense but in

retaliation."

¶ 42        "The conclusive character of the new evidence is the most important element of an actual innocence claim." *Harris*, 2024 IL 129753, ¶ 65. " 'Conclusive' means the evidence, when considered along with the trial evidence, would probably lead to a different result." *Id.* The new evidence "need not be entirely dispositive to be likely to alter the result on retrial." *Robinson*, 2020 IL 123849, ¶ 56. "Rather, the conclusive-character element requires only that the petitioner present evidence that places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." *Id.* "In assessing whether a petitioner has satisfied the low threshold applicable to a colorable claim of actual innocence, the court considers only whether the new evidence, if believed and not positively rebutted by the record, could lead to acquittal on retrial." *Id.* ¶ 60.

¶ 43        Here, we find the new evidence in the affidavits of Prather and West could lead to an acquittal on retrial if it was found to be credible by the fact finder. Prather averred that Collins had confessed to being the initial aggressor prior to Collins's attempt to kill defendant and admitted that defendant shot him in self-defense. Obviously, evidence that the alleged victim and key State witness had confessed to being the initial aggressor, in direct contradiction of his trial testimony, and admitted that defendant had acted in self-defense, would place the trial evidence in a different light and raise the probability of an acquittal on retrial. See, *e.g.*, *id.* ¶ 80 (holding that evidence of a confession "is of such a conclusive character as to probably change the outcome at a retrial"); see also *People v. Adams*, 2013 IL App (1st) 111081, ¶ 37 (holding that a proposed witness statement that is exonerating and contradicts a State witness is capable of leading to an acquittal on retrial). West averred that he witnessed the events in question and would testify that Collins was the initial aggressor, not defendant, and defendant was only acting

in self-defense. West's proposed eyewitness testimony would directly contradict the State's only eyewitness account of the event and offer direct support for defendant's version, which would undoubtedly place the trial evidence in a different light and raise the probability of an acquittal on retrial. See, *e.g.*, *Harris*, 2024 IL 129753, ¶ 69 (finding conclusive the proposed eyewitness testimony identifying a different shooter because "a jury could determine that [the] proposed testimony exculpates [the defendant] as the shooter and refutes the testimonies of" two of the State's witnesses). Thus, we find the affidavits of Prather and West are "conclusive."

¶ 44    The State's argument to the contrary on this point is unpersuasive. Relying on *Guja*, 2016 IL App (1st) 140046, ¶ 54, the State contends defendant could not establish a self-defense claim on retrial because, by shooting Collins eight times, he responded to Collins's aggression "with such excessive force that he [was] no longer acting in self defense but in retaliation." The *Guja* court held that the evidence in that case did not support the defendant's self-defense theory where "the record establishe[d] that [the victim] had abandoned the quarrel after being knocked unconscious and that [the] defendant, in retaliation, used excessive force" by continuing to attack the victim while she was unconscious. *Id.* ¶ 55. Here, there is no evidence in the record that defendant shot Collins after he had lost consciousness or "abandoned the quarrel." *Id.* Instead, both Prather and West averred that the initial shots were fired as defendant and Collins were struggling for control of the gun and defendant fired the remaining shots as he was backing away from Collins and being chased by him. Thus, the facts in this case are dissimilar to those in *Guja*, and we reject the State's argument.

¶ 45                                III. CONCLUSION

¶ 46    For the reasons stated, we find defendant has set forth a colorable claim of actual innocence based on newly discovered evidence. As a result, we reverse the trial court's judgment

and remand for second-stage proceedings under the Act. See *Robinson*, 2020 IL 123849, ¶ 85 ("Granting leave to file means that the petition advances to second-stage proceedings, at which counsel will be appointed and the State can either move for dismissal or file an answer.").

¶ 47          Reversed and remanded with directions.